IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **NIKERRAY MIDDLEBROOK**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 05-827-SLR |
| | : | |
| **THOMAS CARROLL**, | : | |
| Warden, and **CARL C. DANBERG**, | : | |
| Attorney General of the State of | : | |
| Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In July 1997, the petitioner, Nikerray Middlebrook, was convicted by a Delaware Superior Court jury of attempted first degree murder, first degree assault (as a lesser-included offense of attempted first degree murder), two counts of possession of a firearm during the commission of a felony ("PFDCF"), and possession of a deadly weapon by a person prohibited. *See Middlebrook v. State*, 815 A.2d 739, 741 (Del. 2003). Middlebrook was sentenced to an aggregate of thirty-eight years in prison, suspended after thirty-seven years for one year of probation. *See id.* On appeal, the Delaware Supreme Court affirmed Middlebrook's convictions and sentence.[1] *Id.* In October 2003, Middlebrook applied for postconviction relief under Superior Court Criminal Rule 61, which was denied in December 2004. *See State v.*

---

[1] Because Middlebrook's attorney failed to file a direct appeal as requested by Middlebrook, the Superior Court vacated Middlebrook's original sentence of June 1998 and re-imposed the same sentence on August 21, 2000, to allow Middlebrook to docket an appeal. *See Middlebrook*, 815 A.2d at 742-43.

*Middlebrook*, 2004 WL 2914281 (Del. Super. Ct.). That decision was affirmed on appeal to the Delaware Supreme Court. *Middlebrook v. State*, 2005 WL 2334386 (Del.). Middlebrook's federal habeas petition is dated November 30, 2005.

Facts

As detailed by the Delaware Supreme Court, *Middlebrook*, 815 A.2d at 742, the facts leading to Middlebrook's arrest and conviction are as follows:

> On August 23, 1996, Jerome Perkins was shot in the left abdomen and Jerry Williams was shot in the neck by a masked assailant. The bullet was still lodged in William's [*sic*] neck at the time of trial. The shooter fired at least five shots at Perkins and Williams. Prior to the shooting, Middlebrook and Jerry Williams had been engaged in an ongoing dispute originating from their separate relationships with the same woman.
>
> The shooting occurred at approximately midnight in the early morning of August 23, 1996 on a crowded street corner in Wilmington. A masked man ran from between two houses, and began shooting at Perkins and Williams. The shooter then chased Perkins down the street. After Perkins ducked into a neighboring house, the shooter fled the scene.
>
> While running away the shooter dropped something out of a backpack he was carrying. Although the shooter's face had been completely concealed, he pulled up his mask to look for the dropped item. When the mask was raised, both Jerome Perkins and Meisha Perkins testified that they had a clear view of Middlebrook's face. A box of bullets was later recovered in this area by the police.
>
> Williams also testified that Middlebrook was the shooter. Williams stated that he had known Middlebrook for eight years prior to the shooting. He testified that he was able to identify Middlebrook as the shooter based on what Williams knew to be Middlebrook's mannerisms, walk, and body type.
>
> Following the shooting, but five days prior to the arrest of Middlebrook, the police recovered a backpack from Walt's Chicken, a business near the shooting scene. Inside that backpack were latex gloves, ski masks, a skull cap, a toothbrush, deodorant and a box of bullets of a similar type to the box of bullets found at the shooting scene. The investigating officer photographed the backpack with its contents.

After his arrest, Middlebrook admitted to the police that he had recently owned a backpack similar to the one displayed in the photograph and containing similar toiletries. Middlebrook also told the police, however, that he had given his backpack to a friend several weeks before the shooting. After Middlebrook's arrest, the investigating officer did not change the label on the backpack recovered at Walt's Chicken from a "found property" tag to an "evidence" tag. Consequently, the backpack was destroyed according to department policy sixty days after the date it entered the records division. The backpack recovered at Walt's Chicken by the police five days before Middlebrook's arrest was therefore not preserved for testing and was not available for use at trial.

Discussion

In his petition for federal habeas relief, Middlebrook raises the following grounds for relief: (1) the introduction into evidence of the photograph of the backpack found at Walt's Chicken was overly prejudicial; (2) a police detective's trial testimony that Middlebrook had possessed a nine millimeter gun clip "when arrested for another 'unrelated incident'" (D.I. 2 at 7) tainted the trial; (3) Middlebrook was not permitted to present "any information in mitigation at sentencing" (D.I. 2 at 9) in violation of his Sixth Amendment rights; (4) trial counsel was ineffective for failing to file a motion to suppress Middlebrook's statement, failing to impeach an eyewitness with evidence of witness tampering and prior dishonest conduct, and failing to request DNA and ballistics testing; and (5) appellate counsel was ineffective for failing to raise a speedy trial claim on direct appeal and failed to inform him of his right to petition for certiorari in the United States Supreme Court.   D.I. 2 at 6-11.   Middlebrook's claims, however, are unavailing.

*Claim 1 – photograph*

Middlebrook contends that he was denied his right to a fair and impartial trial by the admission into evidence of a photograph of a backpack that had been destroyed by the police prior to trial. D.I. 2 at 6. A state petitioner seeking federal habeas relief must exhaust remedies

3

available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). To exhaust state remedies, a petitioner must have raised in the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). In federal habeas, it is the petitioner who bears the burden of establishing that the exhaustion requirement has been satisfied. Landano, 897 F.2d at 668; *Flamer v. Chaffinch*, 827 F. Supp. 1079, 1099 (D. Del. 1993), *aff'd*, 68 F.3d 710 (3d Cir. 1995), *cert. denied*, 516 U.S. 1088 (1996) (citations omitted). "If the state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365. The state courts must have been on notice that Middlebrook was asserting a claim predicated on federal law. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Johnson v. Carroll*, 250 F. Supp. 2d 395, 400 (D. Del. 2003), *rev'd on other grounds*, 369 F.3d 253 (3d Cir. 2004). Thus, if a petitioner presented a claim to a state court only on state law grounds, and not on federal constitutional grounds, he has failed to exhaust state remedies. *Duncan*, 513 U.S. at 365; *Dawson v. Snyder*, 988 F. Supp. 783, 809 (D. Del. 1997). Further, the "petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts in his federal habeas petition." *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996).

Middlebrook's claim concerning the admission of the photograph was raised as a state law claim, however, and not as a federal due process constitutional claim. Middlebrook

4

presented his claim that the trial court should not have allowed the introduction of the backpack photograph into evidence on direct appeal from his conviction. In his brief on direct appeal, Middlebrook presents no due process analysis and cites to only one federal case, *Brady v. Maryland*, 373 U.S. 83 (1963), for the proposition that the police should not be allowed to avoid their duty to produce potentially exculpatory evidence by mishandling the evidence. *See* Op. Br. at 13 in Del. Supr. Ct. No. 424/427, 2000. Middlebrook's argument was that the trial court admitted the photograph in violation of Delaware Rule of Evidence 403. *See id.* at 9-13. The brief does complain that "[t]he defendant's right to a fair trial and sentencing were prejudiced by the introduction of the photograph." *Id.* at 13. That statement, however, is followed by a citation to a Delaware Supreme Court case, *Farmer v. State*, 698 A.2d 946 (Del. 1997), resting on state law grounds. *See Bright v. Snyder*, 218 F. Supp. 2d 573, 578-79 (D. Del. 2002). Further, neither the State's answering brief nor the Delaware Supreme Court's opinion affirming the conviction interpreted Middlebrook's claim to be a federal constitutional claim. *See* Ans. Br. at 5-9 in Del. Supr. Ct. No. 424/427, 2000; *Middlebrook*, 815 A.2d at 743-45. *See also Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir. 1982) (state's understanding of a petitioner's argument, as reflected in his brief before the state court, is relevant to determining whether a petitioner has exhausted state remedies). Notably, in its opinion regarding the admission of the photograph into evidence at trial, the state supreme court did not apply federal law. *See Middlebrook*, 815 A.2d at 743-45. Thus, the state court was not put on notice that Middlebrook was asserting a federal constitutional claim, and he has failed to establish that his claim was exhausted. *See Johnson*, 250 F. Supp. 2d at 401.

     Ordinarily, a failure to exhaust a claim results in dismissal of the habeas petition so that the petitioner may exhaust state court remedies. *See Rose*, 455 U.S. at 510. If, however, there is

no available state remedy, then Middlebrook is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989). If Middlebrook tried to raise this issue as a federal claim in a second state postconviction motion, his claim would be barred by Criminal Rule 61(i)(2) for failure to have raised the issue in his first postconviction motion and Criminal Rule 61(i)(3) for failure to have raised the issue on direct appeal. *See* DEL. SUPER. CT. CRIM. R. 61(i)(2), (3). Moreover, because his conviction became final more than three years ago, this claim would also now be time-barred under the rule. *See* DEL. SUPER. CT. CRIM. R. 61(i)(1). As a result, Middlebrook is excused from satisfying the exhaustion requirements as to his evidentiary claim. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 454 (D. Del. 1998).

Nevertheless, federal habeas review of Middlebrook's claim is barred unless he establishes cause for his procedural defaults in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir.) *cert. denied*, 504 U.S. 944 (1992); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986). To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). Middlebrook has failed to allege cause for his procedural default, and the claim can be dismissed on that basis alone. *E.g. Dorsey v. Carroll*, 393 F. Supp. 2d 272, 276 (D. Del. 2005). *See also*

6

*Coleman*, 501 U.S. at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995) (citing cases).

*Claim 2 – prior bad act*

In his second claim, Middlebrook asserts that a police officer's testimony "that the petitioner possessed a nine millimeter gun clip when arrested for another unrelated incident" denied him his right to a fair and impartial trial. D.I. 2 at 7. Once again, Middlebrook has failed to establish that he has exhausted his state court remedies. Middlebrook presented his claim that the jury was tainted by evidence of Middlebrook's involvement in an unrelated incident to the state court only as a state law claim. *See* Appellant's Op. Br. at 19-20 in Supr. Ct. No. 424, 2000. Middlebrook's brief submitted to the Delaware Supreme Court on direct appeal refers to only the state constitution and a Delaware case relating to the timing of the admission of prior bad acts of a defendant to rebut an anticipated affirmative defense. *See* Op. Br. at 20 in Del. Supr. Ct. No. 424/427, 2000 (citing Del. Const. art. I, § 7 and *Taylor v. State*, 777 A.2d 759 (Del. 2001)). State prosecutors, in their answering brief, also failed to analyze this issue as a federal constitutional issue. *See* Ans. Br. at 5-9 in Del. Supr. Ct. No. 424/427, 2000. Finally, the Delaware Supreme Court made no reference to federal constitutional law in its denial of the claim. *See Middlebrook*, 815 A.2d at 745-46. Thus, the state court was not put on notice that Middlebrook was asserting a federal constitutional claim, and he has failed to establish that his claim was exhausted. *See Johnson*, 250 F. Supp. 2d at 401.

If, however, there is no available state remedy, then Middlebrook is excused from the exhaustion requirement. *See Teague*, 489 U.S. at 298; *Castille*, 489 U.S. at 351-52. If Middlebrook tried to raise this issue as a federal claim in a second state postconviction motion, his claim would be barred by Criminal Rule 61(i)(2) for failure to have raised the issue in his

first postconviction motion and Criminal Rule 61(i)(3) for failure to have raised the issue on direct appeal. *See* DEL. SUPER. CT. CRIM. R. 61(i)(2), (3). Moreover, because his conviction became final more than three years ago, his claim would also now be time-barred under the rule. *See* DEL. SUPER. CT. CRIM. R. 61(i)(1). As a result, Middlebrook is excused from satisfying the exhaustion requirements as to his evidentiary claim. *See Lawrie*, 9 F. Supp. 2d at 454. Nevertheless, federal habeas review of Middlebrook's claim is barred unless he establishes cause for his procedural defaults in the state courts and actual prejudice. *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Ellingsworth*, 783 F. Supp. at 218-21. Middlebrook has failed to allege cause for his procedural default, and the claim can be dismissed on that basis alone. *E.g. Dorsey*, 393 F. Supp. 2d at 276. *See also Coleman*, 501 U.S. at 757; *Murray*, 477 U.S. at 533; *Carter*, 910 F. Supp. at 151 (citing cases).

*Claim 3 – witnesses at sentencing*

Middlebrook complains that he was prevented from having live witnesses testify in mitigation at sentencing. D.I. 2 at 9. Middlebrook presented this claim to the Delaware Supreme Court on direct appeal from his conviction, thus exhausting state remedies. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Sentencing, however, is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review. *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42-3 (3d Cir. 1984) (holding that errors of state law in sentencing are not cognizable in federal habeas proceedings); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure). Not only did Middlebrook not have a right under state law to present live witnesses at sentencing, there is no federal right to do so either. *Cf. Lockett v. Ohio*,

438 U.S. 586, 605 (1978) (finding that in noncapital cases, there is no federal constitutional requirement for individualized sentences). The Delaware Supreme Court rejected this claim under state law, specifically citing to Criminal Rule 32(a). *See Middlebrook*, 815 A.2d at 746-47. Moreover, because there is no federal constitutional right to specific sentencing procedures in noncapital cases, Middlebrook has failed to articulate a federal claim cognizable on federal habeas review and this claim must be dismissed.

*Claim 4 – ineffective assistance of trial counsel*

In his final claim for relief, Middlebrook asserts that his trial counsel was constitutionally ineffective for failing to file a motion to suppress Middlebrook's statement, failing to impeach an eyewitness with evidence of witness tampering and prior dishonest conduct, and failing to request DNA and ballistics testing. *See* D.I. 2 at 11. Middlebrook presented his claims to the state supreme court on appeal from the denial of his 2003 postconviction motion. *See Middlebrook*, 2005 WL 2334386 at *1 (affirming *Middlebrook*, 2004 WL 2914281). Thus, Middlebrook's claims of ineffective assistance of trial counsel have been exhausted. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Middlebrook's claims, however, do not provide a basis for relief.

After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Middlebrook presented his claim that his counsel was ineffective for failing to request DNA and ballistics testing to the state supreme court, without having presented the issue to the lower court. *See Middlebrook*, 2005 WL 2334386 at *1 n.1. Under Delaware Supreme Court Rule 8, only claims that have been fairly

9

presented to the trial court may be presented for review, unless required in the interests of justice. Because Middlebrook raised this claim for the first time on appeal, he failed to comply with the relevant state procedural requirements. Thus, federal habeas review of Middlebrook's claim is barred unless he establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 804-05; *Ellingsworth*, 783 F. Supp. at 218-21. Middlebrook asserts that he raised this claim in the trial court prior to his direct appeal, but that the claim was ignored. *See* D.I. 2 at 11. Middlebrook's original postconviction motion was granted due to counsel's failure to docket a direct appeal. Middlebrook did not raise the claim after his re-sentencing to allow for a direct appeal. Middlebrook did not raise the claim in his 2003 postconviction motion, nor did he reference the claims that he had raised in his 2000 postconviction motion. Thus, neither the prosecution nor the trial court was on notice that Middlebrook intended to present any of his earlier claims. Consequently the Delaware Supreme Court properly applied Rule 8 to dispose of this claim and Middlebrook has not shown cause for his failure to have presented the issue in his 2003 postconviction motion.

Regardless, Middlebrook cannot establish prejudice. Defense counsel cross-examined the chief investigating officer regarding the gun, mask and ammunition clip admitted as evidence at trial, eliciting that the police had not performed any scientific testing on the mask. *See* Appellant's Appendix at B1 in Del. Supr. Ct. No. 30, 2005. The gun and clip were both processed for fingerprints, but none were found. *See id*. at B1-2. In his closing argument, defense counsel emphasized the lack of evidence connecting Middlebrook to the shooting and the State's failure to preserve evidence and to conduct testing that could have linked Middlebrook to the physical evidence. *See id*. at B3. Counsel was able to argue that no physical

evidence was presented tying his client to the shootings. It is unclear how any DNA testing would have assisted Middlebrook's defense. If his DNA was found on any of the items at issue, that evidence would have been used against him. If his DNA was not discovered on those items, that would not have exculpated him, just as a lack of his fingerprints failed to sway the jury that he was not the shooter. Similarly, Middlebrook has not articulated how ballistics testing would have furthered his defense. Thus, Middlebrook cannot establish prejudice from his counsel's reasonable strategic decision to cross-examine the police regarding a lack of testing rather than request additional DNA and ballistics testing. Further, Middlebrook has not raised a colorable claim of actual innocence such as to overcome his procedural default.

As to Middlebrook's remaining claims of ineffective assistance of trial counsel, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court must apply a restricted scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Under § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary,

and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In *Strickland*, the United States Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id*. at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. See *Strickland*, 466 U.S. at 687. The Third Circuit has stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 668); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In the first instance, Middlebrook complains that his trial counsel was ineffective because he failed to file a motion to suppress oral statements Middlebrook made to police after his arrest. In Middlebrook's state postconviction action, however, the trial court found that Middlebrook

received his *Miranda*[2] warnings and that Middlebrook's claim that his statements were involuntary due to his use of alcohol and drugs was belied by the videotape of the police interviews. *See Middlebrook*, 2004 WL 2914281 at *3. Those findings must be presumed correct as Middlebrook has failed to provide any evidence, much less clear and convincing evidence, to the contrary. *See* 28 U.S.C. §§ 2254(e)(1); *Campbell*, 209 F.3d at 286 (presumption of correctness applies to both explicit and implicit findings of fact); *Ahmad v. Redman*, 782 F.2d 409, 412-14 (3d Cir. 1986); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). The trial court, analyzing the issue under *Strickland*, held that Middlebrook failed to overcome the presumption of reasonableness of his counsel's decision not to move to suppress the statements, and that in any case, "there is almost no likelihood that the court would have suppressed the statements." *Middlebrook*, 2004 WL 2914281 at *3. The Delaware Supreme Court affirmed the trial court's decision on the same basis. *See Middlebrook*, 2005 WL 2334386 at *1. Thus, the state court decision was a reasonable application of the *Strickland* standard and this claim should be dismissed.

      Middlebrook's complaint that his trial counsel failed to impeach the State's eyewitnesses with their criminal histories meets a similar fate. The trial court found that defense counsel made a strategic decision to attempt to establish that, due to the chaotic situation, the witnesses were mistaken about the identity of the shooter. *See Middlebrook*, 2004 WL 2914281 at *4. Counsel highlighted the inconsistency between the testimony of Jerome Perkins and Misha Perkins in a specific instance to promote the idea that Misha was focused on her brother in the midst of a

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

confusing situation. *See id.* Although another attorney might have elected to cross-examine the witnesses about their criminal past, counsel's decision to impeach their testimony by questioning their ability to accurately identify a masked shooter in the midst of a frenzied scene did not fall below reasonable professional standards. Moreover, the state court also found that Middlebrook had failed to establish that his counsel's failure to ask the witnesses about their criminal histories would have changed the jury's view of the testimony. *See id.* Thus, the state court's decision that Middlebrook failed to meet either prong of the *Strickland* test was a reasonable application of Supreme Court precedent. Under the federal habeas statute, "it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Middlebrook has failed to carry his burden, and his claim should accordingly be denied.

*Claim 5 – ineffective assistance of appellate counsel*

In his final claim for relief, Middlebrook asserts that his appellate counsel was ineffective because he failed to raise a speedy trial violation claim and counsel failed to inform Middlebrook about his right to petition for certiorari in the United States Supreme Court. D.I. 2 at 11. These claims were presented to the state supreme court on appeal from the denial of Middlebrook's 2003 postconviction motion, and these claims are thus exhausted. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Nevertheless, the claims are unavailing.

The state court, analyzing Middlebrook's claims of ineffective assistance of appellate counsel under *Strickland*, found that Middlebrook had failed to overcome the presumption that his counsel was effective. *Middlebrook*, 2004 WL 2914281 at *5. As to his claim that counsel failed to raise a speedy trial claim on appeal, the state court found that the ten month delay between the arrest and trial "was neither unreasonable nor prejudicial." *Id.* at *2. Moreover, to

14

the extent that Middlebrook complains regarding the almost one year delay between conviction and sentencing, analyzing the claim under *Barker v. Wingo*, 407 U.S. 514 (1972), the claim fails to provide Middlebrook relief. The principal reasons for the delay were Middlebrook's attempts to change attorneys or because his attorney was unavailable. *See generally* Superior Court Criminal Docket in ID No.9608015635. Further, Middlebrook did not assert his right to a speedy sentencing until sentencing. *See* State's Appendix at B6 in Del. Supr. Ct. No. 30, 2005. Finally, Middlebrook cannot establish prejudice from the delay in sentencing. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). As the sentencing judge noted, "those [other] charges are pending and you're being held on those charges. So even if this case fell apart and even if those charges are bogus, you would still be held in prison. And so you've not served any time waiting for sentencing in this case because of the delay that has been between the time of the jury's verdict and the sentencing." State's Appendix at B7 in Del. Supr. Ct. No. 30, 2005. Because Middlebrook did not have a meritorious speedy trial or sentencing claim, it follows that Middlebrook cannot show that his appellate counsel was ineffective for failing to raise the claim. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Thus, the state court's rejection of this claim was a reasonable application of clearly established federal law.

      Middlebrook's other complaint, that his appellate counsel failed to inform him of his right to petition for certiorari in the United States Supreme Court, is equally unavailing. Looking to the prejudice prong of the *Strickland* test, the state court found that any prejudice alleged by Middlebrook was entirely speculative. *See Middlebrook,* 2004 WL 2914281 at *5. Middlebrook has not demonstrated that but for his appellate counsel's failure to inform him that he could appeal to the United States Supreme Court, Middlebrook would have appealed or been successful in that appeal. Indeed, there is no constitutional right to counsel to pursue

applications for review by the United States Supreme Court. *See Ross v. Moffitt* 417 U.S. 600 (1974). Consequently, Middlebrook had no right to effective assistance of counsel beyond his appeal as of right to the state supreme court. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). In any case, Middlebrook did not articulate which issues he would have appealed or why the Court would have granted him a writ of certiorari. Such a conclusory and speculative claim does not meet the stringent *Strickland* standards. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). As a result, the state court's decision to deny the claim was a reasonable application of *Strickland* and the claim should be dismissed.

<u>Conclusion</u>

Based upon the Superior Court docket sheet, it appears that, a transcript of Middlebrook's July 1997 jury trial (including office conferences on July 15 and 17, 1997) and June 1998 sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

<u>/s/ Elizabeth R. McFarlan</u>
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Date:  March 8, 2006