IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NIKERRAY MIDDLEBROOK,
    Petitioner,

v.

THOMAS CARROLL,
Warden, and CARL C. DANBERG,
Attorney General of the State
of Delaware,
    Respondents

Civ. Act. No. 05-827-SLR

FILED
APR 12 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Points and Authorities in Support of Traverse

Dated: April 5, 2006

# Table of Contents

I. Introduction ... ... ... 1
II. Summary of Arguments ... ... 1-2
III. Argument ... ... ... 2
    Ground 2 ... ... ... 2-5
    Ground 3 ... ... ... 5-7
    Ground 4 ... ... ... 7-8
IV. Conclusion ... ... ... 8

# Table of Authorities

Barker v. Wingo, 407 U.S. 514 (1972) ... ... 8
Burkett v. Cunningham, 826 F.2d 1208 (3d. Cir. 1987) .. 8
Davis v. Alaska, 415 U.S. 308, 316 (1974) ... 4
Giglio v. United States, 405 U.S. 150 (1972) ... 4
Strickland v. Washington, 466 U.S. 668 (1984) ... 1
United States v. Agurs, 427 U.S. 97 (1976) ... 4
Woodford v. Visciotti, 537 U.S. 19, 25 (2002) ... 1

# I. Introduction

In Petitioner's final claim for federal habeas corpus relief Middlebrook asserts that his trial and appellate counsel were constitutionally ineffective for the following reasons: (1) failing to file a motion to suppress Middlebrook's statements he made to police (2) failing to impeach an eyewitness for the state with evidence of witness tampering and prior dishonest conduct (3) failing to request DNA and ballistics testing and (4) failing to raise speedy trial claim on direct appeal.

Under the federal habeas statute, "it is habeas applicants burden to show that the state court applied the Strickland Standard to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002); Strickland v. Washington, 466 U.S. 668 (1984)

# II. Summary of Arguments

Ground 1 - failing to file a motion to supress Middlebrook's statements made to police.

Middlebrook agrees with the State's Answer that the trial courts findings must be presumed correct as Middlebrook has failed to provide any evidence, much less clear and convincing evidence to the contrary that Middlebrook's trial counsel was ineffective for failing to file motion to suppress statements made to police.

Ground 2 - failing to impeach the state's eyewitnesses with criminal histories

1.

Middlebrook denies the State's Answer that his claim is substantively meritless.

Ground 3 - failing to request DNA and ballistic testing.

Middlebrook deny's the State's Answer that this claim is substantantively meritless and procedurally barred.

Ground 4 - failing to raise speedy trial claim on direct appeal.

Middlebrook denies the State's assertion that this claim is meritless.

III.   Argument

Ground 2 - failing to impeach the state's eyewitnesses with their criminal histories.

(1) Eyewitness Miesha Perkins testified to the following at Middlebrook's trial:

On August 23, 1996 she and several friends were located in a house on 2500 Bowers Street. While standing in the homes doorway Miesha saw a masked gunman run out of an alley way firing shots into a crowd of people, who included her brother (Jerome "J.R." Perkins). The gunman chases J.R. around the side of a home located on 2700 Bowers Street. Miesha followed behind the masked shooter who chased her brother. During the chase the gunman stops because he dropped something out of a bookbag he was carrying. The

2.

masked shooter lifts up the mask. Miesha who is 10-20 feet away from the gunman gets a close look at him. She identifies the gunman as Middlebrook.

(2) Despite an on-going criminal investigation Miesha never spoke to the police or prosecutor that she witnessed an attempted assination of her brother. Her identification of Middlebrook as the gunman was delayed until his July trial (10 months after her brother's initial identification of Middlebrook as the shooter).

(3) Police interviewed J.R. several times before trial. But never interviewed Miesha. However Miesha testified that she was an eyewitness to the shooting.

(4) The biggest error trial counsel made during Middlebrook trial was not cross-examining Miesha concerning her delayed identification.

(5) During trial Middlebrook made his trial counsel aware of the fact that it was widely speculated that J.R. assaulted Miesha with a weapon to force her to testify falsely against Middlebrook.

(6) On May 15, 1997 J.R. pleaded guilty to assaulting Miesha. The assault charges stem from his attempt to procure perjured testimony. see State v. Jerome Perkins Crim. Case Id. 9701010995, Crim. Action Number IN97-03-0811, 0812, 0813 and 0814. Superior Court Criminal Docket & Sentencing Order

3.

(7) The assault influenced Miesha's duty to tell the truth. Miesha did not identify Middlebrook as the shooter before trial because she witnessed what 10-20 other eyewitnesses saw during the attempted assination, a unidentified mask gunmen.

(8) The state resolved the case between the brother and sister one month before trial. J.Z. plead guilty to a lesser-included offense and was order to have no contact with Miesha.

(9) The Attorney General ("AG") knew about the facts surrounding the assault. Middlebrook informed his counsel before trial about the case he uncovered through another witness. Giglio v. United States, 405 U.S. 150 (1972), United States v. Agurs, 427 U.S. 97 (1976)

(10) Clearly forcing someone to testify falsely is probative of truthfulness. Where the determination of defendant's guilt of innocence is dependent upon credibility of a prosecution witness, it is particulary important that defendant be accorded an adequate opportunity to demonstrate through cross-examination that the witness is biased. Davis v. Alaska, 415 U.S. 308, 316 (1974) Moreso, extrinsic evidence is admissible to establish that the witness has a motive to testify falsely.

(11) The jury was denied additional revelent information, with which it could assess the witnesses' credibility, that decision was constitutionally impermissible.

4.

(12) Undoubtly, J.R. was shot. J.R. was determined to make sure that the person he believed shot him would go to prison. So he forced Miesha to corroborate his pre-trial and trial statements.

(13) J.R. was a seasoned criminal who was known for his witness intimadation. J.R. a violent street criminal and narcotics dealer, employed associates to sell his drugs and henchman to carry out his bidding to injure or kill. The AG knew that people were terrified to testify against him. He also had the power to get people to recant or perjure themselves. Sunday News Journal. "Riverside mourns slain 'ghetto icon." Oct. 23, 2005. A1

(14) Petitioner incorporates his argument asserted in the lower trial court and Delaware Supreme Court that J.R. should have been cross-examined about his criminal history. See also Sunday News Journal. "Riverside mourns slain 'ghetto icon." Oct. 23, 2005. A1 and A9.

(15) Trial counsel needed to show the jury why Miesha identified Middlebrook at trial when she did not and couldn't identify Middlebrook before trial. J.R's intimidation forced her to lie.

Ground 3- failing to request DNA and ballistics testing

(1) DNA evidence was not present to the jury at trial. A black hooded ski mask and gloves the shooter wore was introduced into evidence during Middlebrook's trial. This evidence would have exonerated Middlebrook. This is a colorable claim of actual innocence

5.

(2) Misidentification defense at trial. Misidentification is a reasonable doubt defense. Moreso, Middlebrook asserts that the eyewitness identification is fallible in his case.

(3) Victim Jerry Williams could not identify Middlebrook as the shooter during several interviews with police. However, after talking with the other state eyewitnesses, he testified at trial he knew who shot him. Eyewitness Miesha Perkins testified that she recognized Middlebrook as the shooter after intimidation from her brother. She never identified Middlebrook as the shooter before trial. J.R. Peelkins identified Middlebrook after police prodding.

(4) Studies show eyewitness identification is the number one cause of wrongful convictions. DNA has proved wrongly convicted persons innocent.

(5) Middlebrook begin seeking DNA testing in 1997. He has asserted his innocence since the day of his arrest.

(6) He requested his trial counsel to have the evidence tested. Trial counsel did not.

(7) DNA testing on the evidence will exonerate Middlebrook. The states eyewitnesses testified at trial that the gunman discarded the black hooded ski mask and gloves he was wearing at the crime scene.

6.

(8) Middlebrook filed a second Postconviction motion under Superior Court Criminal Rule 61 on January 27, 2005 requesting DNA testing on the evidence. The court refused to apply state procedural rules to the motion. The state was ordered to responded to the motion. If Middlebrooks DNA is not discovered on the evidence he has established prejudice. See Super. Ct. Crim. Docket. Ex

(9) Middlebrook ask this court to stay his federal hebeas corpus until testing can be accomplished.

Ground 4 - failing to raise speedy trial claim on direct appeal.

(1) The State's Answer misconstrues this claim as "speedy trial," but his claim has little, if anything to do with the time before his arrest and trial. Rather, Middlebrook alleges that the length of time between his trial and sentencing, and between re-sentencing and disposition of his direct appeal, amounted to a deprivation of his constitutional rights.

(2) Middlebrook incorporates his argument presented to the Delaware Superior Court on postconviction and Delaware Supreme Court on appeal from the denial of his postconviction. See exhibit State Court Records Appellants Opening brief No. 30, 2005, States Answer Brief (Appellee), Appellants Reply brief. See also Petitioners Post-conviction motion State v. Middlebrook, 2004 WL 2914281 (Del. Super. Ct.) af. Postconviction Motion exhibit 2

(3) Middlebrook was arrested on September 11, 1996. His trial was held 10 months later on July 15, 1997.

A jury convicted him on July 18, 1997.

(4) Middlebrook was sentenced on June 12, 1998 after numerous delays.

(5) A total delay of 47 months between Middlebrook's arrest and sentencing

(6) Middlebrook's June 12, 1998 sentence was imposed on August 21, 2000 to allow him to file a direct appeal. However, Middlebrook's direct appeal was not filed and affirmed until 28 months later because of numerous intentional delays caused by the state.

(7) Over 6 years passed between Middlebrook's arrest through the affirmance of his appeal. Middlebrook suffered prejudice from the delay. See Appellants opening brief No. 30, 2005, Appellants Reply brief, Petitioners postconviction motion for details of prejudice. (State v. Middlebrook No. 9608015635

(8) The delay warrants further inquiry into the Barker v. Wingo factors. The federal circuit courts of appeals have presumed that a defendant does have a Right to a speedy sentencing and appeal. The courts have generally followed the same speedy trial analysis set forth in Barker v. Wingo, 407 U.S. 514 (1972) see, e.g., Burkett v. Cunningham, 826 F.2d 1208 (3d. Cir. 1987)

IV.   Conclusion

Grant Petitioner Relief.

9.

Dated: April 5, 2006

*Nikerray Middlebrook*
Nikerray Middlebrook, pro se
DCC
1181 Paddock Rd
Smyrna DE 19977

9.



I/M Nikerray Middlebrook
SBI# 245569  UNIT 19 B-L-7
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S.M.S.
X-RAY

Office of the Clerk
United States District Ct.
844 N. King St., Lockbox 18
Wilmington, DE
19801-3570