III. The delay of over 47 months between the defendant's arrest, trial, conviction, original sentence and reimposed sentence may have violated his Sixth Amendment right to a speedy trial, and the passage of over 28 months from notice of appeal to affirmance of Judgment of his direct appeal by the Supreme Court may have violated his right to due process under the 14th Amendment to a prompt direct appeal causing the defendant unnecessary concern and anxiety and substantial prejudice in violation of both the United States and Delaware Constitutions and the Equal Protection Clause.

Standard and Scope of Review:

Barker v. Wingo, 407 U.S. 514 (1972)

ARGUMENT

1. Middlebrook was found guilty after a Jury trial on July 18, 2003 and a sentence date was scheduled for September 5, 1997 at 9:30 AM (almost a year after his arrest).

2. On September 5, 1997, the sentencing hearing was continued at the request of the State Attorney General, Robert Surles, without objection from Middlebrook's assistant Public Defender. (A-3-4)

3. On September 26, 1997, the Prothonotary docketed Middlebrook's Motion to Dismiss Counsel/for substitution of appointed Counsel based on the irreconcilable conflict between Middlebrook and his assistant Public Defender, James Bayard. (A-4)

Exhibit A

24.

4. On October 14, 1997, the Court ruled on Middlebrook's motion to dismiss (see Court's order dated October 14, 1997), specifically whether Middlebrook desired to be sentenced as soon as possible. (A-4)

5. Only the Court continued to ignore Middlebrook's assertion of the right to a speedy trial.

6. The sentencing phase was unnecessary delayed for 11 months because of the states intentional attempt to prolong the proceedings to deliberately prejudice Middlebrook. At this point 21 months passed between Middlebrook's arrest, trial, conviction and original sentence. United States v. Marion, 404 U.S. 307, 320 (1971), United States v. Campisi, 583 F.2d 692, 694 (3d Cir. 1978). (A-4, A-33)

7. After Middlebrook's sentencing hearing on June 12, 1998, his privately retained attorney, Caroline Ayres discovered new evidence in this case and filed a new trial motion under Superior Court Criminal Rule 33. Unfortunately, because of Ayres inexcusable and wanton disregard for the rules of the Court he loss his right to appeal. (A-4-6, A-43)

8. At this point Middlebrook was left without the skillful hand of Counsel to seek redress from the Court.

Exhibit A

25.

9. Middlebrook then filed a number of unsuccessful letters and petitions challenging the injustice of not being able to appeal from his conviction and sentence because of counsel rendering him ineffective assistance of counsel. see the Court's docket. (A-6-7, A-15-21, A-57-72)

10. Over one and half year elapsed after Middlebrook's June 12, 1998, sentence hearing before the Court recognized Middlebrook's right to file a direct appeal had been lost. On January 11, 2000, the Court granted Middlebrook's motion for appointment of counsel reappointing the Public Defender to represent him. (A-6-7)

11. On January 14, 2000, Public Defender, James Bayard met with Middlebrook at Gander Hill Prison to discuss filing a post conviction motion to the Court.

12. Four months later, Middlebrook filed a letter with the Court expressing his total dissatisfaction with his public defender, Bayard and requested another attorney to be assigned to the case because of the neglect in filing for post conviction relief. (A-21)

13. On June 2, 2000, Middlebrook filed for post conviction relief raising ineffective assistance of counsel. (A-38-40)

14. On August 21, 2000, after much confusion surrounding Middlebrook's original sentencing and the events immediately following the sentencing phase the Court reimposed his sentence, in it's entirety to remove the injustice of the loss of his direct appeal. At this point a total of 47 months passed since Middlebrook's arrest. (A-41)

Exhibit A

15. This postverdict delay not only impeded sentencing, but also impeded Middlebrook's direct appeal. See Evitts v. Lucey 469 U.S. 387 (1985); Griffin v. Illinois, 351 U.S. 12 (1956).

16. On August 30, 2000, Middlebrook filed a pro se notice of appeal from the Superior Court's sentencing order dated August 21, 2000, because Bayard had failed to recognize his continuing obligation under Supreme Court Rule 26(a). The clerk of the Supreme Court by letter dated August 30, 2000, instructed Bayard of his continuing obligation to represent Middlebrook. On September 5, 2000, Bayard recognized his continuing obligation to represent Middlebrook by filing a formal notice of appeal on behalf of Middlebrook to the Supreme Court. (A-47-52) (A-81) (A-52-56)

17. Based on the tumultuous relationship between Middlebrook and Bayard, the apparent conflict, Middlebrook filed a motion to dismiss counsel and leave to proceed pro se on direct appeal. (A-78-80)

18. The appellate Court by order dated September 13, 2000, granted Middlebrook's motion for remand for an evidentiary hearing. The Supreme Court retained jurisdiction and the case was due to be returned from remand by November 13, 2000. (A-82-84)

Exhibit A

27.

19. Because the Superior Court blantly ignored the Supreme Court's order to hold an evidentiary hearing and to return this case from remand by November 13, 2000. The clerk of the Supreme Court by letter dated November 22, 2000, requesting that a status report be filed on or before December 4, 2000. Eight days after the letter from the Supreme Court Clerk the Superior Court conducted a hearing on the record on November 30, 2000, with respect to Middlebrook's request to purse his appeal prese. (A-79)

20. The Superior Court after conducting a relative extensive hearing on Middlebrook's motion to dismiss counsel refused to appoint substitute counsel and forced Middlebrook to represent himself on direct appeal, in sprite remaining convinced the decision was a mistake. (A-86-87)

21. The trial Judge's order dated December 4, 2000, was approved and adopted by the Supreme Court without the trial record on December 6, 2000. The Court then issued a brief schedule. (A-85)

22. Because of the delay of transmitting the record and the confusion surrounding this case Middlebrook was unfairly and unjustly forced to attempt to defend this case and an unrelated case; both cases were consolidated before the Court on January 30, 2001, without such things as law library access, the trial transcripts and record, etc. Finally, on May 11, 2001, after having the opportunity to consider the briefs on appeal as well as the trial record the Court concluded that the instructions contained in its remand were incomplete. (A-80) Exhibit A

So this case was once again remanded to the Superior Court. The case was due to be returned from remand by June 11, 2001. (A-10)

23. Nonetheless, the delays persisted, an evidentiary hearing scheduled for May 31, 2001, was rescheduled until June 8, 2001. At this time Middlebrook again requested to be appointed conflict-free counsel. On June 21, 2001, Jerome Capone, Esq. was appointed as conflict attorney to represent Middlebrook. The entire appellant delay lasted for 28 months until the affirmance of Middlebrook's direct appeal. (A-11)

24. Clearly, the state initiated the delay in a deliberate attempt to gain an unfair advantage on Middlebrook and at this point cannot offer any justifiable reasons for the delay.

25. The record is clear that Middlebrook asserted his right to speedy trial in a timely fashion. (A-14)

26. Because of the delay Middlebrook has suffered oppressive incarceration, anxiety and concern, including health problems and emotional stress, the unavailability of witnesses, and substantial impairment to the grounds of his direct appeal and defense, such as the review of rulings made by the trial court denying a motion for post conviction relief. These issues were not raised on direct appeal because of his previous attorneys failure to docket a timely notice of direct appeal from the denial of the motion. Middlebrook cannot avoid the bar of Rule 61(i)(3). (See attached affidavit detailing prejudice)

Exhibit A

27. Middlebrook's right to a speedy trial and due process may have been violated by a delay of over six years between indictment and the affirmance of his direct appeal. Middlebrook asserts that the court should, 1) attempt to fashion a remedy to counteract any resulting prejudice demonstrated by Middlebrook. However no remedy may call back the time that constitutes the delay to fix the prejudice of the fundamental unfairness Middlebrook suffered. Any alternative remedy may itself violate Middlebrook's rights. Therefore, the court may have to decide whether 1) a new trial should be held or 2) whether due to the passage of time the charges must be dismissed.

Exhibit A

## Conclusion

WHEREFORE, for the reasons set forth herein and in the document incorparted by reference, Middlebrook respectfully request that the Court:

(1) order an evidentiary hearing and appoint counsel for Middlebrook,

(2) grant the motion for post conviction relief, reverse Middlebrook's conviction, and order a new trial; and

(3) grant all other appropriate relief.

Dated: 10/22/03

*[signature]*
Mikerray Middlebrook
SBI 00295569 Unit S-1
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Exhibit A

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE           :
                            :    Criminal I.D. No. .
V.                          :
                            :
NIKERRAY MIDDLEBROOK        :

## AFFIDAVIT

STATE OF DELAWARE     )
                      ) SS.
COUNTY OF NEW CASTLE  )

I, Nikerray Middlebrook, being first duly sworn upon oath deposes and says the following in support of his Postconviction Relief Motion pursuant to Superior Court Criminal Rule 61:

1. I am the Movant in the above captioned motion.

2. This postconviction is being filed in goodfaith.

3. I have not waived nor should be considered to have waived any of the constitutional issues being raised herein.

4. There are no procedural impediments to be considered.

Exhibit A

32

5. I lived in an atmosphere of intimidation and suffered violence at the hands of fellow prisoners during the unnecessary delay in this case.

6. I lived under overcrowded, filthy and harsh living conditions, such as bad lighting, which contributed to diminished eye sight, no insect control, broken toilets, unjustified and unnecessary lockdowns and searches that contributed to my extreem emotional stress.

7. My condition affected my family relationship and financial situation (loss of employment, etc.)

8. I experienced mental torment because of not being able to attend the funeral of close family members (grandfather and great aunt) due to the lack of finality in this case.

9. The pressure from attempting to defend complex criminal matters without counsel cause unwarranted stress causing me to binge eat, which increased my blood pressure.

10. I had a sense of hopelessness, trouble concentrating, lost of interest in everything, difficulty sleeping, fatigue and loss of energy because of the delay in this case, which affected my ability to assist my defense attorney.

11. I experienced loss of appetite and loss of companionship on account of the inability to determine the length of my incarceration.

Exhibit A

33.

12. I continue to experience these symptons today, and even feel I might be better off dead from feeling trapped in this procedural tennis match.

13. The destructive effect on my character has intensified, especially since I experienced a lenthy pretrial incarceration (see Case No. 273, 2000, Reversed and Remanded).

14. Presently, I suffered prejudice against me during my prison classification because of being forced to represent myself pro se before the Court. I was classified to a higher security level because I was not able to hold a prison job assignment and represent myself pro se before the Supreme Court at the same time. During this time the prison job assignment created a schedule conflict forcing me to resign from prison job assignment. My resignation resulted in a disciplinary infraction, which resulted in loss of priveleges.

15. The delay has also caused my grandmothers health to deteriorate due to the exhausting of her savings in a attempt to resolve the fundamental injustice that only became more egregious.

Exhibit

34.

10/2/03                                  Mikey Middle
---------                                ----------------
DATE                                     NAME

                                         Delaware Correctional Center
                                         1181 Paddock Road
                                         Smyrna, DE 19977
                                         --------------------------
                                         ADDRESS

SUBSCRIBED AND SWORN to me before this __2d__ day of
__October__, 2003.      Edward Johnson

My commission expires __Oct, 04__

Exhibit A

35.