✓#20
c mlm
6-13-05
cuc

# In the Supreme Court of the State of Delaware

Nikerray Middlebrook,

Appellant

No 30, 2005

V.

State of Delaware

Appellee.



## Apellant's Reply Brief

Dated: 6/10/05

Nikerray Middlebrook

~~Delaware Corr. Ctr.~~

Smyrna De 19977

Exhibit *B*

# Table of Contents

Ground 1.............................................................................................page 1-7
Ground 2.............................................................................................page 7-10
Ground 3.............................................................................................page 10
Ground 4.............................................................................................page 11-12
Ground 5.............................................................................................page 12

### Cases

Apprendi v. New Jersey, 5390 U.S. 466 (2000)................................................page
Krist v. Eli Lily &Co. 897 F2d 293 (7th Cir. 1990).............................................page
Steckel v. State, 795 A.2d 651,652 (Del 2002)................................................page 1
Schneckcloth v. Bustamonte, 412 U.S. 218,227 (1973)........................................page
United States v. Loud Hawk, 474 U.S. 302,315 (1986)........................................page

United States v. Hell, 165 F.3d 1095, 1118-20 (7th Cir. 1999) (Concurring Opinion) page 7

### Statues

11  Delaware Code, Section 4504                                          ....page 6

Exhibit B

I.    The Superior Court Abused Its Discretion By Ruling that Middlebrook's claim of Ineffective Assistance of Counsel is Procedurally barred under Superior Court Criminal Rule 61(i)(3)(A) and (B) and Substantively Meritless.

## Standard and Scope of Review

Following a denial of a defendants post conviction motion alleging ineffective assistance of counsel, this Court Reviews the Superior Court's factual findings for abuse of discretion and its findings of law de novo. Steckel v. Stat, 795 A.2d 651,652 (Del 2002)

## Argument

1. Middlebrook agrees with the state that he raised six grounds for relief in the Superior Court, but disagrees with the States assertion that he presents seven grounds for relief on appeal. Here are the grounds:

### *Ground One: Speedy Trial/Sentencing/Appeal*

1. Middlebrook claims that appellate counsel is the cause for his procedural default of his speedy trial, sentencing, and appeal claim.

2. This claim of ineffective assistance of counsel could not have been raised procedurally prior to this time because appellate counsel neglected to raise the claim on direct appeal.

3. Middlebrook's claim challenges his right to a speedy trial, sentencing, and appeal.

4. The delays in this case begin in the pre-trial stages. Before trial the state requested several continuances on the following dates — January 27, 1997, March 24,1997, and May 5,1997. This was a sign of things to come.

5. Middlebrook asserted his right to a speedy trial before these delays. (Exhibit A)

6. The state requested numerous trial delays between Middlebrook's arrest and trial. The total delay amounted to six months. Middlebrook calculates this time based on his first trial date from his arrest. Therefore, the time between January 27 and July 15, 1997 is almost six months, which must be contributed to the state.

7. After Middlebrook's trial, the court scheduled his first sentencing hearing on September 5, 1997. However, the court granted the state a continuance until the resolution of another set of charges, which were eventually dismissed for lack of speedy trial. Middlebrook requested a speedy sentencing before the continuance. (Exhibit B)

8. Middlebrook filed a motion objecting to the Superior Court's decision to grant a continuance. His motion detailed the conflict with defense counsel. Counsel's decision to not contest the states request for a continuance was the basis of the motion. (Exhibit C)

9. The state's reply brief mistakenly describes the September 1997 sentencing as being continued because of Middlebrook's Motion to dismiss Counsel. Middlebrook filed the Motion to dismiss on September 26, 1997, twenty-one days after the September 5 sentencing. The motion centered on Middlebrook's right to a speedy sentencing.

10. On October 4, 1997, the court ordered trial counsel to meet with Middlebrook in order to discuss the issues raised by him in his motion filed on September 26 and to

whether Middlebrook wants to be sentenced a soon as possible. (See Exhibit D Super. Ct. docket entry no. 53)

11. At the meeting Middlebrook informed his trial counsel that he wanted to be sentenced as soon as possible. Middlebrook's next sentencing date was set for November 1997.

12. At the sentencing, hearing Middlebrook informed the court of the potential conflict of interest with his counsel because of the ineffective assistance of counsel claims raised in his motion for Judgment of Acquittal (Exhibit E). The court informed him that it would address the issues later and that the court would not appoint another attorney to represent him at sentencing, but would consider letting Middlebrook represent himself pro se.

13. Middlebrook a laymen to the law did not want to represent himself pro se, so he asked the court to reschedule the sentencing to allow him to hire privately retained counsel. The court continued the sentencing until February 1997. The State requested a continuance for the February 1997 sentencing. The court granted the states request and set another sentencing date on March 1997. Middlebrook's defense counsel request that the March 1997 sentencing be continues because she was going on vacation. Middlebrook was sentenced on June 12, 1998. (Exhibit D)

14. Middlebrook filed a motion to dismiss for lack of speedy sentencing at the June hearing. The motion.was denied. (Exhibit E)

15. The state admits that the length of delay in this case warrants further inquiry, but asserts that the cause of the delay rest with Middlebrook.

16. The State must bear the burden for the delay. The State requested the first continuance on September 1997.This continuance caused a two-month delay and lead to a rift between Middlebrook and his counsel, which caused Middlebrook to request a continuance of the November 1997 sentencing. The state is responsible for the continuance of the March 1997 sentencing causing a delay of two more months. The state is responsible for half of the sentencing delays. In essence, if the state had not requested a continuance of the September 1997 sentencing, Middlebrook would not be raising this claim and no confusion would be surrounding this case.

17. The state's initial request for a continuance lead to all the other delays in this case. Middlebrook feels that the state used the September 1997 continuance as a way to get unfair leverage over Middlebrook.

18. After Middlebrook's trial, the basis for a continuance of Middlebrook's sentencing was discussed. All the parities agreed to violate Middlebrook's right to a speedy sentencing. At this time, Middlebrook asserted his right to a speedy sentencing. (Exhibit F)

19. The State concedes to the first factor of the speedy sentencing analysis, length of delay. In light of the state's intentional attempt to delay Middlebrook's case on September 1997, the second factor in the analysis, the reason for the delay tips in Middlebrook's favor as well.

20. The second factor is the flag all litigants seek to capture, United States v. Loud Hawk, 474 U.S. 302,315 (1986). The cause of the delay in this case, between arrest and trial, between conviction and sentencing, rests almost entirely with the State.

Exhibit B

21. The state is responsible for the following delays: January 27,1997,March 24,1997, May 5,1997, September 5,1997, November 7,1997, and February 26,1997. The total amount of time attributed to the state for these delays, which occurred from the pretrial stages through the sentencing, is almost sixteen months. The continuance of the November 1997 sentencing rest with the state because the court granted Middlebrook the option to hire new counsel was because of a conflict of interest with his Public Defender.

22. There is evidence that the prosecution intentionally manipulate the Judicial Process. The state deliberately gave the court the appearance that the purpose of delaying sentencing was to resolve an unrelated case, however the state was not prepared to resolve the unrelated case, which was eventually dismissed.

23. The third factor in the speedy trial, sentencing, and appeal analysis tips in Middlebrook's favor. Middlebrook asserted his right to a speedy trial before his July 1997 trial. The right to a speedy trial has been assumed to cover from arrest to the defendants first appeal of right.

24. The final factor prejudice tips in Middlebrook's favor as well.

25. Middlebrook lived under oppressive incarceration for almost four years while housed at Gander Hill'Prison, which was overcrowded. Middlebrook was arrested on September 11, 1997 and his direct appeal was not filed to December 2001.He was housed in Gander Hill until October 2000. Middlebrook detailed his oppressive incarceration in an Affidavit attached to Rule 61 motion. (Exhibit G)

26. In brief, Middlebrook suffered lack of sleep, loss of appetite, companionship, emotional stress associated with his inability to determine the length of his sentence. He also suffered anxiety and stress because he was facing a potential life sentence. Middlebrook loss his job and could not finish his education (He was employed and attending college before his arrest). He experienced financial and general strain. Anxiety was put upon his family and friends because of their attempt to help him defend a crime he didn't commit.

27. More so, Middlebrook was deprived of his right to review at a meaningful time because of the sentencing delay. Middlebrook's direct appeal was affirmed six years after his 1997 conviction.

28. After he discovered that his attorney did not file a timely direct appeal, he wrote to Judge Silverman to obtain relief. In November 1999, Middlebrook filed a series of motions and letter to the court in attempt to remove the injustice. Middlebrook's pleas were ignored. (Exhibit H)

29. The delays continued for years, despite Middlebrook's persistent cry for relief. Finally, almost two years after his sentencing the court reappointed the Public Defender to help Middlebrook remove the injustice of no appeal being filed in his case. However, the delays continued until Middlebrook filed a pro se post conviction motion challenging his counsel's representation.

Exhibit 2

- 3 -

30. Based on the allegations raised in the post conviction motion, the court reimposed Middlebrook's original sentence on August 21, 2000. Almost four years after his arrest and over three years after his conviction.

31. The case would incur more delay because the court ignored the conflict of interest between Middlebrook and the Public Defendrer.The court reappointed the Public Defender to file Middlebrook's appeal from his reimposed sentence and conviction. Despite the court's order, again no notice of appeal was filed from the August 2000 sentence. The Supreme Court clerk had to remind the Public Defender of his continuing obligation to Middlebrook and directed him to file a notice of appeal. (Exhibit H)

32. Based on the conflict with the Public Defender, Middlebrook filed a motion to dismiss counsel on September 2000. This court granted the motion and remanded the case back to Superior Court with instructions. The case was due back in this court by November 13, 2000. However, the Superior Court ignored this courts September order.

33. On Novembers 22,2000, the Supreme Court Clerk by letter requested a status report due to the courts negligence. Of course this cause more delay. See Suprene Ct.docket no. 9 and 14

34. Faced with a dilemma, the Superior Court forced Middlebrook to represent himself on direct appeal. He suffered great anxiety and stress while trying to defend his direct appeal pro se, especially since he was forced to represent himself on an unrelated case which was consolidated with the case at bar.

35. After review Middlebrook's brief, this court remanded the case back the Superior Court to afford him the opportunity to be appointed conflict-free counsel. Middlebrook was appointed counsel and his direct appeal was filed on December 2001, four years after his conviction and five years after his arrest. His appeal was affirmed on February 2003.

36. Middlebrook suffered the following limitation to the grounds of his appeal:

    a. Review of the denial of New Trial Motion

        i. Middlebrook filed a new trial motion following his June 12, 1998, sentencing. The motion was denied, however, appellate counsel did not file an appeal from the denial. The issue was never raised before this court.

        ii. The lower court may have abused its discretion by deciding that the new presentment of evidence offered by Amanda Chambers and Regina Green probably would not change the outcome of trial. The court may have erred because Regina provides the only description of the shooter. She states that the shooter was over six feet tall and slender. Green has no criminal record and is the only unbiased witness in the entire case. However, the court concluded that without the benefit of the trial transcripts, the court couldn't precisely recall the physical descriptions. Upon closer review of the transcript the States witness Miesha Perkins states that both she and Green witness the crime, although Perkins offers no physical descriptions



- 4 -

of the shooter, nor chose to give any pre-trial statements to police. Moreover, the victim of the shooting was her brother. There is a good chance Perkins might have embellished her testimony. (Exhibit I)

iii. If presented with the testimony of Green, who is an upstanding citizen of the community, the jury might have believed perspective of the case over the states witnesses who have criminal histories of dishonesty. Furthermore, two state witnesses did not identify Middlebrook until his trial, despite the ensuing police investigation. A jury might find their stories a little suspect for not coming forward and positively identifying Middlebrook as the shooter for approximately 10 months. Therefore, Regina Green becomes a crucial eyewitness to the crime that the jury should see and hear.

iv. There is a good possibility that if counsel was armed with the credible witness it is more likely than not that no reasonable juror would have convicted Middlebrook. The court should take into consideration that the states witnesses gave prior inconsistent statements or none at all. Add to the fact that no DNA or ballistics test were done on vital evidence, there is a reasonable probability that a jury might find Middlebrook not guilty, especially in light of the CSI effect on juries today.

v. The Superior Court should have transcribed the trial transcript before ruling on the motion. Without the benefit of the transcript, the court could not conclusively conclude that Green's testimony would not persuade a jury that it was not Middlebrook. This error is fatal and the court should have called an evidentiary hearing. There is a good probability the evidence is loss now.

b. Review of Middlebrook's ineffective assistance of counsel claim for failure to request DNA and ballistics test

   i. Middlebrook challenged his trial counsel's performance on post conviction motion filed back in June of 2000.Counsel should have sought testing on evidence that the state submitted at trial— A ski mask, black gloves, 9mm shell casings and a box of bullets, which the state said belong to Middlebrook.

   ii. The state argues that Middlebrook suffered no prejudice. The state's position is wrong because the only concrete evidence besides missing witnesses was scientific evidence. Middlebrook is sure that the results of the test will prove that he was not the shooter.

   iii. Based on the trial testimony of state witnesses, the shooter dropped the ammunition so there is a possibility that he may have left fingerprints. The ski mask and gloves were also worn by the shooter, so there is possibility that he left behind DNA. Counsel should have requested testing on this

Exhibit B

- 5 -

evidence because Middlebrook assured him that he was not the shooter and had no connection with the evidence.

iv. On July 12,200 the court ruled that it would take this issue up again after Middlebrook's direct appeal. The court did not. (Exhibit J). The claim could have been raised on direct appeal under 11 Del. Code section 4504.

v. Now because the claim was ignored by the lower court the state suggest that it should be barred. The state cannot say with a straight face that Middlebrook has failed to establish plain error. Middlebrook is not a lawyer, he did everything possible to get the court to address the issue.

vi. Because the court did not address the claim, the evidence may have been destroyed (Exhibit K). Middlebrook's grounds for appeal cannot be fully explored.

c. Loss of evidence to support challenge to trial counsels conduct

i. The following evidence has been lost or destroyed because of unnecessary delay. Middlebrook informed counsel that he should investigate these
· allegations back in 1997.

1. Trial counsels file (Exhibit L)

2. DNA and ballistic evidence

3. Witnesses Regina Green and Amanda Chambers

4. The opportunity to make concrete allegations of prejudice regarding his statements to police and why counsel should have moved to suppress with such evidence as: log books to show that Jerome Perkins was in lock-up with Middlebrook to support the allegation that police used Perkins verbal threats to get Middlebrook to talk with police. Middlebrook was assaulted by Eric Lloyd, who is a friend of Perkins while in police custody. Police used the threat of fear Perkins and his friend to coerce Middlebrook to talk with Detectives.

5. Potential witnesses to the assault n Middlebrook by one of Jerome Perkins friends. Video of the incident of the assault.

6. Video of the first interview with Cpl. Miller of the Wilmington police department. Cpl. Miller physically threatened Middlebrook during this interview and forced him to cooperate with police interrogation.

37. Middlebrook ask this court to find merit in his detailing of prejudice. Middlebrook asserts that his right to a speed trial, sentence and appeal may have been violated under both the

$E \times hibit$ $B$

- 6 -

6th and 14th amendments to both the Delaware and Untied States Constitution. The State concedes that he captured the first factor of the analysis. Middlebrook ask this court to find that he has made a substantial show that the other three factors tips in his favor as well.

### GROUND TWO: FAILURE TO IMPEACH STATE'S EYEWITNESSES.

1. The court ruled that Counsel was not ineffective for failing to impeaching the witnesses with their criminal history.

2. Impeaching the witnesses with their criminal histories would have supported Middlebrook's defense theory that police officers induced eyewitnesses to falsely identify him.

3. The court ruled out the success of such a defense theory. It is not unheard of for witnesses in attempted homicide investigation to be instructed by police to pick specific suspect out from a single photo lineup and warned that he/she risked jail time if they informed prosecutors or court of officers manipulation.

4. Middlebrook informed counsel of the possibility that the police may have induced the witnesses to identify him as the shooter.

5. Jerry Williams, Miesha and Jerome Perkins supplied the principal evidence at trial. They identified Middlebrook as the shooter. The jury should have known about their prior dishonest behavior. More so the jury did not Know that they were contradicting earlier statements given to police during the trial. The jury did not know that the state's witnesses were not the most savory characters as well

6. Because police might have induced the witnesses to finger Middlebrook, by the time of trial the witnesses sincerely believed that Middlebrook was the shooter. They did not need immunity; instead, they needed protection from steps that took advantage of memory's frailty. Middlebrook's lawyer needed, but did not do, use information vital to probe whether manipulation occurred or they were bluntly lying.

7. A person who sees a criminal for only a brief time takes away a vague sense of appearance and behavior—and that sense may be focused by a photograph, etc., after the event. This is exactly what may have happened in Middlebrook's case. Once the witness decides its "X" the view may be unshakable. Psychological research has established that the witness faith is equally strong whether or not the identification is correct. Sometimes the witness zeros in on the correct person, sometimes not; there is an element of chance an opportunity for manipulation. Krist v. Eli Lilly & co. 897 F.2d 293 (7th Cir. 1990) See Elizabeth F. Loftus & James M. Doyle, Eyewitness Testimony (1979; rev. ed. 1996); Daniel L. Schacter, The Sins of Memory: How the Mind Forgets and Remembers 112-37 (2001) See also United States v. Hall, 165 F.3d 1095, 1118-20 (7th Cir 1999) (Concurring Opinion)

8. Jurors tend to think that witnesses memories are reliable (because they are confident of their own), and this gap between the actual error rates and the jurors heavy reliance

$Exhibit B$

on eyewitnesses testimony sets the stage for erroneous convictions when everything depends on uncorroborated eyewitness testimony. This is why it was vital for counsel to present evidence about how the witness was shown a single photo of Middlebrook before the jury. It was also equally important to explore the question whether the witness testimony at the trial was attributable to deliberate manipulation instead of chance.

9.  Middlebrook is not saying tat the jury could not consider the possibility that unhappy chance rather than Malfeasance led to the mistaken conviction. For if chance errors are to blame, and the Jerome Perkins would have identified him no matter how the officers prompted him during the lineup, than the conviction is good.

10. But given that the only option counsel presented to the court and jury is that the witnesses mistakenly identified Middlebrook, we cannot make the determination that not only was Middlebrook mistakenly identified, the witnesses may be lying as well because of police pressure.

11. Counsel told the jury in his opening statements that he would present two sides of the coin— Mistaken identification or the possibility that the witnesses are blatantly lying. (Exhibit M) Nevertheless, he did not. The jury was not going to believe that Middlebrook did not do the crime if his counsel did not believe in his client enough to present evidence as to why the states witnessed identified him as the shooter.

12. Furthermore, because witnesses character and reputation were not explored the state was enabled to argue that the witnesses were not model citizens. (Exhibit N). Middlebrook does not disagree with his defense. — Attacking the accuracy of the eyewitnesses testimony. You will typically be claiming in such an argument that the eyewitness is either mistaken or lying in a case such as this.

13. As mentioned in number 11 of this argument counsel explained to the jury that he would show them both that the eyewitness is mistaken and lying. However, counsel did not assert in the defense that the witnesses intentionally or knowingly misidentified Middlebrook because of police coercion.

14. The point that Middlebrook is making is that your cross examination of the witnesses and investigating authorities will be influence by what you argue at the end of the case. Counsel needed to know where he was going, so he could plan hoe to get there and know how he arrived. He needed to develop factors that cast great doubt on the accuracy of the witnesses opinion that Middlebrook is the shooter.

15. His strategy should have focused on the fact that Middlebrook did not so the crime, rather than the more legalistic argument that the prosecution failed in its burden of proof. Juries have a great fear of convicting an innocent person. This is a value counsel should have stressed from the opening to closing. Counsel in his opening Stated," This is where Middlebrook is, that he has no involvement in this situation whatsoever and that's why were going to trial." Counsel did not do this at trial.



16. Counsel's demeanor should have been consistent with those heartfelt words that Middlebrook is not eh perpetrator and that a great injustice will be done if convicted. He did neither—His conduct suggested otherwise and he did not tell the jury Middlebrook was innocence.

17. The state suggest that Middlebrook does not explain how a more aggressive line of questions would have benefited his defense or what prejudice he suffered by not asking these questions.

18. Misidentification is a "reasonable doubt defense. In effect, counsel was contending there was at least a reasonable whether Middlebrook committed the crime. His cross-examination of the witness identification that provides the doubt. To achieve this goal, he could have focused on the factors that weaken the credibility of the witness identification. Counsel should have asked the following questions:

    a. Have you been drinking or taking drugs?

    b. Why didn't you give an immediate physical description of the shooter?

    c. Why did so much time elapse between the event and the in court-identification without a initial description of the shooter?

    d. Did the police interview you concerning a physical description of the shooter?

    e. Why did you change your initial description and when?

    f. What caused the change in description?

    g. When did you identify Middlebrook as the shooter? Why didn't you identify him prior to trial? How was Middlebrook displayed, showup, lineup, photograph, etc.?

    h. Did you discuss the event or share recollections with one another before trial?

    i. Did the shooter have any obvious distinguishing characteristics?

    j. Did you have and passing contact with Middlebrook prior to or after the event that could cause you to transfer and confuse this contact with the shooting? (Someone screamed Middlebrook's name before the shooting begin Exhibit O) Police report is exhibit o .

19. Counsel needed to show the jury that the investigators might have done something unduly and improperly to influence the witnesses identification and that the witnesses were prone to police influence because of their criminal history. Jerome Perkins is the witness who identified Middlebrook initially from a single mug shot photo shown to him right after he came out of surgery. Using the above-mentioned questions and the witnesses criminal records counsel might have done just that.

Exhibit B

20. The biggest mistake Counsel made was not cross-examining Jerome and Miesha Perkins about a particular incident between the two of them. Jerome assaulted Miesha with a weapon to force her to testify falsely against Middlebrook. The state resolved the case between the brother and sister one month before Middlebrook's trial. Jerome plead guilty to a lesser-included charge and was ordered by the court to have not contact. Jerome Perkins forced Miesha to testified falsely because of her fear of him.

21. Because counsel did not question the witnesses concerning such things, including the fact Williams and Miesha delayed their identification of Middlebrook until the trial. The possibility of police pressure and coercion. The possibility the both Miesha and Jerome Perkins stood to gain something for testifying for the state. Miesha might get her open charges dropped and Jerome might avoid a jail sentence as seen from his plea bargain he received right before trial. The jury might have reasoned that they were not credible, especially since their criminal histories involved crimes of dishonesty Middlebrook was found guilty because the jury did not get to hear his defense that the witnesses were either lying or mistaken. Middlebrook might not have spent the last eight years of a 38-year sentence in jail for a crime he didn't commit.

Exhibit B

## Ground Three: Ineffective Assistance Of Counsel-Failure To File Motion To Suppress Statements

1. Middlebrook alleges that counsel was ineffective for failing to suppress statements that he made to police during questioning after his arrest. The states position is that Middlebrook failed to make concrete allegations o prejudice regarding his statements to police and why counsel should have moved to suppress.

2. Middlebrook's statements create a Miranda problem because police questioned him under the influence of drugs, Police used impressible tactics such as physical and verbal threats, denied him food and water, used a two-staged interrogation technique.

3. . More so, Middlebrook suffered from withdraw pain and had not slept. He wasn't fed anything or given water. He was forced to waive his right to an attorney. Middlebrook passed out at the end of the interrogation

4. The fact really undermine Middlebrook's credibility very badly and had the circumstance of the tape been kept out of trial, Middlebrook might have had a better chance of being believed that he wasn't the shooter.

5. The police interview prejudiced Middlebrook's case because he was dopey enough to try to make the police think he was someone else when they had his prints, etc.

6. As a result, Middlebrook did not knowingly waive his right to counsel or to remain silent.

7. Trial counsel recognized the possibility of a possible Miranda violation, as well as the prosecutor. Counsel and the prosecutor agreed not to use the second taped interview. Nevertheless, the e prosecutor used the statements to cross-examine Middlebrook. This issue was brought to Middlebrook's attention by his former appellate counsel Jerome Capone.

8. The court reviews these issues under the Totality of the circumstances, including the behavior of the interrogators, conduct of defendant... and all pertinent factors. Schneckcloth v. Bustamonte, 412 U.S. 218,227 (1973). The court did not review the claim under the correct law; therefore, States position that Middlebrook suffered no prejudice is wrong.

## Ground Four: Ineffective Assistance of Counsel-Failure to Seek Scientific Testing on Evidence

1. The state asserts that Middlebrook doesn't point to what items his trial counsel should have sought DNA and ballistic Testing

2. Trial counsel should have sought to have the black gloves and ski mask tested for DNA. He should have sought to have the box of bullets and shell casings tested for ballistics.

3. The state argues that Middlebrook suffered no prejudice as result of counsels actions. The states argument is absurd because all across the country men and women are being freed from prison because of scientific test exonerate them. They were convicted because of attorneys who failed to request test on the evidence.

4. The states position that this issue was not presented to the Superior court in the first instance is incorrect as well. Middlebrook raised this ground on to the Superior Court on



Exhibit B

July 2000, however the court deferred ruling until after his direct appeal, but did not.
Now he raises the issue to this court

### *Ground Five: Re-Sentencing Not In Middlebrook's Presence*

1. The state mistakenly interprets his re-sentencing claim. Middlebrook had a conflict of interest with the Public Defender. On the face of the order, the Public Defender was appointed to represent Middlebrook for the purpose of the reimposed sentence and direct appeal.

2. By denying Middlebrook's claim, the Superior Court might have denied him two very important constitutional rights—Right to conflict free counsel and self-representation. Both rights can only be waived by the defendant.

3. Middlebrook represent himself up to the proceedings leading to the reimposed sentence, he should have had the option to accept conflict –free counsel or self-representation.

4. One of the main reasons why Middlebrook needed to be present to represent himself or with counsel was to preserve certain legal rights that might otherwise be lost.

5. During the sentencing hearing the prosecutor presented evidence that Middlebrook stood over a man and shot him in the Chest. (Exhibit Sentencing Tr. at 12-13 (6/12/98)

6. This evidence was demonstrably false and unreliable. The prejudice he suffered is in the amount of time he received as a direct result of the evidence. Apprendi v. New Jersey, 5390 U.S. 466 (2000)

Exhibit B

## Conclusion

The decision of the Superior Court should be reversed.

Dated:  6/16/05

_____

Nikerray Middlebrook
DCC
Smyrna, DE 19977

Exhibit B