IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **NIKKERRAY K. MIDDLEBROOK,** | ) | |
| | ) | |
| Defendant-Below, | ) | |
| Appellant, | ) | No. 30, 2005 |
| | ) | |
| v. | ) | On Appeal from the |
| | ) | Superior Court of the |
| **STATE OF DELAWARE,** | ) | State of Delaware in and |
| | ) | for New Castle County |
| Plaintiff-Below, | ) | |
| Appellee. | ) | |

STATE'S ANSWERING BRIEF

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Gregory E. Smith
Bar I.D. No. 3869
Deputy Attorney General
820 North French Street
7th Floor
Carvel State Building
Wilmington, DE  19801
(302)577-8398

Dated:  May 31, 2005

Exhibit C

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS.......................................ii

NATURE OF PROCEEDINGS.....................................1

SUMMARY OF ARGUMENT.......................................3

STATEMENT OF FACTS........................................4

ARGUMENT

    1.    **THE SUPERIOR COURT PROPERLY DENIED MIDDLEBROOK'S**
         **MOTION FOR POST-CONVICTION RELIEF** ...............6

CONCLUSION..............................................21

*State v. Middlebrook*, ID No. 9608015635, Silverman, J.
(Del. Super. Ct. Dec. 16, 2004)........................Ex. A

ExhibitC

i

**TABLE OF CITATIONS**

Cases                                                                    Page

*Ayers v. State*, 802 A.2d 278 (Del. 2002)..................14

*Barker v. Wingo*, 407 U.S. 514 (1972)......15, 16, 17, 18, 19

*Bialach v. State*, 773 A.2d 383 (Del. 2001)................14

*Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987).......15

*Dawson v. State*, 673 A.2d 1186 (Del. 1996).................6

*Gov't of the Virgin Islands v. Pemberton*,
813 F.2d 626 (3d Cir. 1987)................................20

*Grosvenor v. State*, 849 A.2d 33 (Del. 2004)...............14

*Hakeem v. Beyer*, 990 F.2d 750 (3d Cir. 1993)......17, 18, 19

*Hardin v. State*, 844 A.2d 982 (Del. 2004)................8-9

*Hooks v. State*, 429 A.2d 1312 (Del. 1981)................7, 8

*Johnson v. State*, 305 A.2d 622 (Del. 1973)................16

*Key v. State*, 463 A.2d 633 (Del. 1983)................15, 16

*Lolly v. State*, 611 A.2d 956 (Del. 1992)..................10

*Middlebrook v. State*, 815 A.2d 739
(Del. 2003)................................2, 4, 7, 10, 16

*Pollard v. United States*, 352 U.S. 354 (1957).............15

*Sistrunk v. Vaughn*, 96 F.3d 666 (3d Cir. 1996)............12

*Strickland v. Washington*, 466 U.S. 668 (1984).........11, 12

*Styler v. State*, 417 A.2d 948 (Del. 1980).................13

*United States v. Loud Hawk*, 474 U.S. 302 (1986).......17, 19

*United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211
(3d Cir. 1972)..............................................17

*Wainwright v. State*, 504 A.2d 1096 (Del. 1986).............9

ii                    $Exhibit C$

<u>Cases</u>                                                                    <u>Page</u>

*Wells v. Petsock*, 941 F.2d 253 (3d Cir. 1991)............17

*Younger v. State*, 580 A.2d 552 (Del. 1990)............12, 14

*Zebroski v. State*, 822 A.2d 1038 (Del. 2003)..............6

<u>Statutes and Rules</u>

DEL. SUPER. CT. CRIM. R. 61 (i)(3)...........................14

Exhibit C

## **NATURE OF PROCEEDINGS**

Wilmington Police arrested Nikkeray Middlebrook on September 11, 1996. (D.I. 1). The New Castle County grand jury indicted Middlebrook on September 30, 1996 on the following charges: two counts of attempted murder in the first degree (11 *Del. C.* §§ 531 and 636); two counts of possession of a firearm during the commission of a felony (11 *Del. C.* § 1447A); possession of a deadly weapon by a person prohibited (11 *Del. C.* § 1448); and receiving stolen property (11 *Del. C.* § 851). (D.I. 7). Superior Court held a three-day jury trial commencing on July 16, 1997, resulting in Middlebrook's convictions on all charges, with the exception that the jury found him guilty of the lesser-included offense of assault in the first degree instead of one of the attempted murder charges.[1]  On June 12, 1998, the Superior Court sentenced Middlebrook as follows: as to attempted murder in the first degree, 25 years at level V; as to assault in the first degree, 2 years at level V; as to each PFDCF conviction, 5 years at level V; and as to PDWBPP, 1 year at level V, suspended for 1 year at level II. (D.I. 64). Neither Middlebrook's appointed counsel nor his privately retained counsel filed a notice of appeal of his conviction and sentence. In order to remedy this failure, Superior Court re-sentenced Middlebrook on August 21, 2000

---

[1] The charge of receiving stolen property was severed and the State dismissed the charge November 12, 1997. (D.I. 57).

1           Exhibit C

to the identical sentence previously imposed.  (D.I. 104).
With appointment of new counsel, Middlebrook filed an appeal
of his convictions and sentences.  On January 28, 2003, this
Court affirmed Middlebrook's convictions and sentence.
*Middlebrook v. State*, 815 A.2d 739 (Del. 2003).

On October 28, 2003, Middlebrook filed his first motion
for post-conviction relief.  (D.I. 131).  On December 16,
2004, Superior Court denied Middlebrook's motion.  (D.I.
138).  Middlebrook appealed and filed his opening brief with
this Court raising four issues on appeal.  This is the
State's Answering Brief on appeal.

Exhibit C

2

## SUMMARY OF ARGUMENT

I.   Appellant's four arguments are denied.   In the instant appeal, Middlebrook has abandoned two of the issues that he raised in Superior Court.   Middlebrook has also raised two issues on appeal that he did not present to Superior Court, neither of which constitute plain error.   Middlebrook's three remaining claims of ineffective assistance of counsel were correctly rejected because he nonetheless failed to show that he had suffered prejudice under the *Strickland* standard.

Exhibit C

3

## STATEMENT OF FACTS[2]

On August 23, 1996, Jerome Perkins was shot in the left abdomen and Jerry Williams was shot in the neck by a masked assailant. The bullet was still lodged in Williams' neck at the time of trial. The shooter fired at least five shots at Perkins and Williams. Prior to the shooting, Middlebrook and Jerry Williams had been engaged in an ongoing dispute originating from their separate relationships with the same woman.

The shooting occurred at approximately midnight in the early morning of August 23, 1996 on a crowded street corner in Wilmington. A masked man ran from between two houses, and began shooting at Perkins and Williams. The shooter then chased Perkins down the street. After Perkins ducked into a neighboring house, the shooter fled the scene.

While running away the shooter dropped something out of a backpack he was carrying. Although the shooter's face had been completely concealed, he pulled up his mask to look for the dropped item. When the mask was raised, both Jerome Perkins and Meisha Perkins testified that they had a clear view of Middlebrook's face. A box of bullets was later recovered in this area by the police.

Williams also testified that Middlebrook was the shooter. Williams stated that he had known Middlebrook for eight years prior to the shooting. He testified that he was

[2] The State's factual recitation is taken directly from this Court's decision of Middlebrook's direct appeal. *Middlebrook*, 815 A.2d at 742.

Exhibit C

4

able to identify Middlebrook as the shooter based on what
Williams knew to be Middlebrook's mannerisms, walk, and body
type.

Following the shooting, but five days prior to the
arrest of Middlebrook, the police recovered a backpack from
Walt's Chicken, a business near the shooting scene.  Inside
that backpack were latex gloves, ski masks, a skull cap, a
toothbrush, deodorant and a box of bullets of a similar type
to the box of bullets found at the shooting scene.  The
investigating officer photographed the backpack with its
contents.

After his arrest, Middlebrook admitted to police that
he had recently owned a backpack similar to the one
displayed in the photograph and containing similar
toiletries.  Middlebrook also told police however, that he
had given his backpack to a friend several weeks before the
shooting.  After Middlebrook's arrest, the investigating
officer did not change the label on the backpack recovered
at Walt's Chicken from a "found property" tag to an
"evidence" tag.  Consequently, the backpack was destroyed
according to departmental policy sixty days after the date
it entered the records division.  The backpack recovered at
Walt's Chicken by the police five days before Middlebrook's
arrest was therefore not preserved for testing and was not
available for trial.

Exhibit C

5

I.    **THE SUPERIOR COURT PROPERLY DENIED ON THE MERITS MIDDLEBROOK'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL**

## Standard and Scope of Review

This Court reviews for abuse of discretion the Superior Court's denial of a motion for post-conviction relief based on ineffective assistance of counsel. *See Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003); *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

## Argument

Middlebrook raised six grounds for relief in the Superior Court: (1) abuse of discretion for failure to hold an evidentiary hearing on his claims of ineffective assistance of counsel; (2) failure of trial counsel to move to suppress statements that he made to police; (3) failure of trial counsel to properly cross-examine several prosecution witnesses regarding their criminal history; (4) failure of appellate counsel to advise him of this Court's disposition of his direct appeal; (5) violation of Criminal Rule 43 as a result of his re-sentencing without his personal appearance; and (6) violation of his right to a speedy trial.  On appeal, Middlebrook has presented seven grounds for relief: (1) ineffective assistance of counsel for failing to object to the prosecutor's comments at sentencing; (2) denial of right to a speedy trial; (3) ineffective assistance of trial counsel for failing to file a motion to suppress statements that he made to police; (4)

6

Exhibit C

ineffective assistance of trial counsel for failure to
cross-examine prosecution witnesses regarding their criminal
history; (5) ineffective assistance of appellate counsel for
failing to inform him of this Court's disposition of his
direct appeal; (6) ineffective assistance of trial counsel
for failing to request DNA or ballistics testing of evidence
recovered; and (7) violation of Rule 43 because Superior
Court did not re-sentence him in person.

### RE-SENTENCING NOT IN DEFENDANT'S PRESENCE

Middlebrook did not raise this Rule 43 claim on direct
appeal, and it is thus procedurally barred by Criminal Rule
61(i)(3). · Middlebrook appears to allege ineffective
assistance of counsel as cause for failure to raise this
claim.   The claim is wholly without merit, for as this Court
explained in its opinion on Middlebrook's direct appeal,
Superior's Court's re-sentencing provided "a complete remedy
for the attorney's failure to file a direct appeal after
Middlebrook's original sentencing." *Middlebrook*, 815 A.2d
at 743.   Superior Court correctly recognized in its denial
of Middlebrook's Rule 61 motion that this Court implicitly
approved of the ministerial act of re-sentencing for the
purpose of permitting Middlebrook to timely take a direct
appeal of his convictions and sentence.   This Court has
previously approved of a similar re-sentencing in a
defendant's absence in *Hooks v. State*, 429 A.2d 1312, 1313

(Del. 1981).   The defendant in *Hooks* had initially been

7     Exhibit C

sentenced to death, and had appeared at sentencing with counsel in court. *Id.* After this Court determined that the statute under which the defendant had been sentenced to death was unconstitutional, the Superior Court re-sentenced the defendant to life, but did so by written decision only. *Id.* This Court analogized the re-sentencing to that of a sentence modification under Rule 35 which does not require a defendant's presence. *Id.* at 1314.

Middlebrook's re-sentencing by written order did not deprive him of any of the principles Rule 43 is designed to protect. Middlebrook had appeared in person at his June 12, 1998 sentencing with counsel. Both he and his counsel had the opportunity, and did, in fact, speak in his defense at sentencing. [B-4-6]. The re-sentencing did not change any part of Middlebrook's sentence, rather it made available to him a timely direct appeal that had otherwise been lost. The Superior Court thus did not abuse its discretion in finding that Middlebrook suffered no prejudice from the procedural default of this Rule 43 claim on re-sentencing.

*INEFFECTIVE ASSISTANCE OF COUNSEL-*
*FAILURE TO OBJECT TO PROSECUTION'S COMMENTS AT SENTENCING*

Middlebrook did not present two of his appellate issues to the Superior Court in the first instance: counsel failed to object to the prosecutor's comments at sentencing and counsel did not request DNA or ballistics testing of evidence. This Court, therefore, reviews these claims only for plain error. *Hardin v. State*, 844 A.2d 982, 990 (Del.

8

Exhibit C

2004); *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986). This Court generally will not review contentions not raised below and not fairly presented to the trial court for decision. *See Wainwright*, 504 A.2d at 1100. The doctrine of plain error is limited to material defects which are apparent on the face of the record and so basic and serious in their character as to deprive the defendant of a substantial right. *Id*. Under this standard, Middlebrook cannot prevail on his claim that his attorney was ineffective for failing object to the prosecutor's comments at sentencing. Despite the fact that his sentencing was transcribed (D.I. 117), Middlebrook does not identify the supposedly objectionable comments. Middlebrook's failure in that regard means that he has failed to meet his burden of establishing the existence of plain error.

*INEFFECTIVE ASSISTANCE OF COUNSEL-*
*FAILURE TO SEEK SCIENTIFIC TESTING OF EVIDENCE*

Turning to Middlebrook's other issue raised for the first time on appeal, that trial counsel was ineffective for failing to request DNA and ballistics testing, this claim is also without merit. *See* Op. Brf. at 37-38. Precisely what items Middlebrook claims his trial counsel should have sought DNA and ballistics testing for is far from clear based on Middlebrook's brief. If the items Middlebrook claims counsel should have tested were the backpack or its contents, such items could not have been tested because they

9   Exhibit C

were lost by the police. Because these items were lost, Middlebrook sought and received a jury instruction directing the jury that had those items been tested, the results of such tests would have been beneficial to Middlebrook. *Middlebrook*, 815 A.2d at 744. This *Lolly*[3] instruction was as good as, if not better than, any testing that Middlebrook now asserts his trial counsel was deficient for not obtaining. Thus, Middlebrook cannot make any plausible showing of prejudice.

With regards to the evidence that the prosecution did submit as evidence at trial (the ski mask, the gun, and the ammunition clip), Middlebrook's counsel cross-examined the chief investigating officer as to each of these items. Middlebrook's counsel brought out under cross-examination that police had not performed any scientific testing on the ski mask. [B-1]. Police did process both the weapon and ammunition clip for latent fingerprints, but found none. [B-1-2]. Middlebrook's counsel emphasized the lack of scientific evidence tying Middlebrook to the items in evidence in his closing argument to the jury. [B-3]. Through his cross-examination and closing argument, Middlebrook's counsel effectively made the points about which Middlebrook now complains. Middlebrook cannot demonstrate that had his counsel requested additional scientific tests that he would have been placed in a better

position than he was by his counsel's cross-examination and

---

[3] *Lolly v. State*, 611 A.2d 956 (Del. 1992).

Exhibit C

closing argument. Because Middlebrook has failed to show

prejudice from his counsel's presumptively reasonable

tactical decisions, he has perforce failed to establish

plain error in the context of this appeal.

> *INEFFECTIVE ASSISTANCE OF COUNSEL-*
> *FAILURE TO FILE MOTION TO SUPPRESS*
> *DEFENDANT'S STATEMENTS TO POLICE*

Middlebrook has alleged ineffective assistance of

counsel in his trial counsel's failure to suppress

statements that he made to police during questioning after

his arrest. To establish his claim of ineffective

assistance of counsel, Middlebrook had to show that

counsel's actions were professionally unreasonable, and that

but for counsel's errors, there is a reasonable probability

that the outcome would have been different. *See Strickland*

*v. Washington*, 466 U.S. 668, 694 (1984). Middlebrook

contends that his trial attorney was ineffective for failing

to suppress the false name that he provided to police upon

arrest, his statement that he owned the backpack found in

the restaurant, his statement regarding his location the

night of the shooting, and his statement that he and

Williams were feuding about a female. As the Superior Court

determined, upon review of the police interrogation,

Middlebrook voluntarily gave his statements to police, and a

motion to suppress almost certainly would have been denied.

> [Middlebrook's] claim that he did not receive *Miranda*
> warnings is incorrect.... [Middlebrook's] claim that his
> statements were involuntary, coming on the heels of a
> night of "drinking and using drugs," is belied by the

Exhibit C

way he appeared and what he said during questioning.
First [Middlebrook] looked and acted composed during
both interviews.  He fenced with the interrogator.

*State v. Middlebrook*, ID No. 9608015635, Silverman, J., at 7

(Del. Super. Ct. Dec. 16, 2004) (Ex. A).  Middlebrook's

counsel cross-examined at length the detective who presented

Middlebrook's statements, thus eliciting the response that

Middlebrook made no admission of culpability during the

interrogation before the jury.  [B-1].  There was also no

prejudice to Middlebrook regarding his statements to police

because the statements were largely exculpatory, and three

witnesses identified Middlebrook as the shooter in court.

By failing to make concrete allegations of prejudice

regarding his statements to police and why counsel should

have moved to suppress it, Middlebrook failed to

substantiate this ineffective assistance of counsel claim.

*See Younger v. State*, 580 A.2d 552, 556 (Del. 1990).  Thus,

Middlebrook cannot show how his counsel's conduct resulted

in prejudice to him or was professionally unreasonable.  *See*

*Strickland*, 466 U.S. at 694.  Defense counsel's performance

is presumptively reasonable, and Middlebrook bears the

responsibility of showing that the Superior Court abused its

discretion in deciding that he did not overcome that

presumption.  *Strickland*, 466 U.S. at 689; *Sistrunk v.*

*Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996).  Thus, Middlebrook

has not established this claim of ineffective assistance of

counsel.

Exhibit C

*INEFFECTIVE ASSISTANCE OF COUNSEL-*
*FAILURE TO CROSS EXAMINE REGARDING CRIMINAL HISTORY*

According to Middlebrook, counsel inadequately cross-examined prosecution witnesses by failing to bring out their criminal histories. As Superior Court noted,

> Viewed out of context, trial counsel's failure to cross-examine the witnesses on their criminal histories appears noteworthy. As the trial unfolded, the criminal histories have less significance. Trial counsel's tack was to establish that Jerome Perkins did not know who shot him. That was a potentially more effective line of impeachment than an attack on his character would have been. Undeniably, Perkins was shot. As a matter of common sense, it is more likely that he would have been mistaken about who shot him than he would have attempted to frame someone and let the shooter go free. While the latter was a theoretical possibility, the former tack was more likely to be convincing.

*State v. Middlebrook*, ID No. 9608015635, Silverman, J., at 9. Middlebrook does not explain how a more aggressive line of questions would have benefited his defense or what prejudice he suffered by not asking these questions. Given Middlebrook's failure to articulate concrete allegations of prejudice, Superior Court did not abuse its discretion in denying this claim of ineffective assistance of counsel.

*INEFFECTIVE ASSISTANCE OF COUNSEL-*
*NOTIFICATION OF DECISION ON APPEAL*

Middlebrook directs his final claim of ineffective assistance of counsel to the performance of his appellate counsel whom Middlebrook claims failed to advise him of the disposition of his direct appeal, and thus deprived him of the opportunity to move for reargument. Middlebrook's claim is wholly without merit. He offered no reason to think

13

Exhibit C

counsel should have moved for reargument or that a motion
for reargument had a reasonable chance of success.  Given
Middlebrook's shortcomings, Superior Court properly
exercised its discretion in summarily dismissing this claim
of ineffective assistance of appellate counsel.

*SPEEDY TRIAL/SENTENCING*

Middlebrook raises a claim liberally read as a denial
of speedy sentencing.  Middlebrook did not raise a speedy
sentencing claim in the direct appeal of his conviction.
Criminal Rule 61(i)(3) provides that "any ground not
asserted in the proceedings leading to the judgment of
conviction, as required by the rules of this court, is
thereafter barred, unless the movant shows cause for relief
from the procedural default and prejudice from violation of
the movant's rights."  A defendant who fails to raise an
issue on direct appeal, with the exception of a claim of
ineffective assistance of counsel, is generally barred from
raising it in a post-conviction motion.  *Ayers v. State*, 802
278, 281 (Del. 2002).  *See also Grosvenor v. State*, 849 A.2d
33, 35 (Del. 2004); *Bialach v. State*, 773 A.2d 383, 386
(Del. 2001).  Middlebrook has offered ineffective assistance
of appellate counsel as cause for his procedural default of
his speedy sentencing claim.  *See Younger*, 580 A.2d at 556.

While Middlebrook styles this claim as "speedy trial,"
his claim has little, if anything, to do with the time
between his arrest and trial.  Rather, Middlebrook alleges

14

Exhibit C

that the length of time between his trial and sentencing, and between re-sentencing and disposition of his direct appeal, amounted to a deprivation of his constitutional rights. Middlebrook does not have a constitutional right to speedy sentencing or appeal. Neither this Court nor the United States Supreme Court has ever held that a defendant has a constitutional right to speedy sentencing. *See Pollard v. United States*, 352 U.S. 354 (1957); *Key v. State*, 463 A.2d 633, 636 (Del. 1983). At most, this Court and the federal circuit courts of appeal have presumed that a defendant does have a right to speedy sentencing and have generally followed the same speedy trial analysis set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *See, e.g., Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987).

In the present case, Middlebrook was arrested on September 11, 1996. (D.I. 1). Middlebrook stood for trial on July 18, 1997, (D.I. 50), roughly ten months after his arrest. Middlebrook, however, focuses his brief on the period subsequent to his conviction. Middlebrook's first sentencing date was scheduled for September 1997, but was continued as a result of Middlebrook's motion to dismiss his trial counsel. (D.I. 51, 53). Middlebrook's sentencing was next scheduled for November 1997, but was continued based on Middlebrook's decision to retain a private attorney. (D.I. 56). Sentencing was then scheduled for February 1998 and was continued. (D.I. 58). Middlebrook's sentencing

15 Exhibit C

scheduled for March 1998 was continued because of his counsel's unavailability. (D.I. 60). Middlebrook was then sentenced on June 12, 1998. (D.I. 64). The events following Middlebrook's sentencing are well documented in this Court's decision of his direct appeal, *see Middlebrook*, 815 A.2d at 742-43, and Middlebrook was re-sentenced on August 21, 2000. (D.I. 104). The Superior Court, at the direction of this Court, held an evidentiary hearing regarding Middlebrook's request to represent himself on November 30, 2000. Once Middlebrook decided to accept new counsel on appeal, briefing continued and this Court affirmed Middlebrook's convictions and sentence and returned the mandate to Superior Court on February 20, 2003. (D.I. 130).

In *Key*, this Court set forth the analysis to be performed regarding a claim of speedy sentencing. *Key*, 463 A.2d at 636. The conduct of both the prosecution and defendant are relevant, particularly concerning (1) the length of the delay, (2) the cause of the delay, (3) the defendant's assertion of his rights, and (4) any prejudice to the defendant because of the delay. *Id.*, citing *Johnson v. State*, 305 A.2d 622, 623 (Del. 1973); *Barker*, 407 U.S. at 530. Because the right to a speedy trial or sentencing is relative, depending on the facts of the particular case, the extent of the delay that will trigger inquiry into the remaining factors depends on the circumstances of each case.

16

Exhibit C

*Barker*, 407 U.S. at 530-31.  Applying these factors to the instant case, a delay of one year between conviction and sentencing warrants further inquiry.  Although sufficeinty long to warrant "plenary inquiry into the remaining *Barker* factors," *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991), the passage of one year between conviction and sentencing is "'not dispositive in and of itself.'"  *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993), *quoting United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211, 1214 (3d Cir. 1972).  The first factor tips in Middlebrook's favor.

The second factor in the analysis, the reason for the delay, has been called "the flag all litigants seek to capture," *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986), since it is here that a speedy trial complaint will most likely succeed or fail.  Here, the cause of the delay between conviction and sentencing rests almost entirely with Middlebrook himself.  The first two continuances of his sentencing date are directly attributable to him because of his efforts to change attorneys.  The docket does not reflect whether the prosecution or the defendant requested the third continuance of his sentencing.  The fourth continuation of Middlebrook's sentencing was the product of his counsel's unavailability.  On the whole, almost the entire reason for the delay in Middlebrook's sentencing must be attributed to him.  There is also no evidence that the prosecution intentionally manipulated the judicial process.

17

At sentencing, Superior Court stated "There's no evidence
other than conclusions, which are not evidence, that the
state has maneuvered improperly. One of the delays, at
least in this case, was occasioned by a request by defense
counsel for delay. I think other delays were occasioned in
part because of getting defense counsel to handle
sentencing. So I think that the delay is not entirely
attributable to anyone, at least in part, beside the
defendant." (D.I. 117, at 15-16). In short, there is no
evidence that the prosecution deliberately attempted to
delay the sentencing in order to harm Middelbrook. In the
typology set out in *Barker*, the reason for the passage of
time between Middlebrook's conviction and trial are "more
neutral reason[s] . . . which [are] weighed less heavily
against the government." *Barker*, 407 U.S. at 531. The
second factor thus weighs heavily against Middlebrook.

The third factor in a speedy sentencing analysis is a
defendant's assertion of his right. Whether and when a
defendant asserts his right to speedy sentencing are factors
of considerable significance in determining whether there
has been a speedy sentencing violation. *See Hakeem*, 990
F.2d at 764. Here, the first time it appears that
Middlebrook objected to this delay was at his sentencing
itself. [B-6]. At the initial continuation of his
sentencing, Superior Court warned Middlebrook that his *pro
se* motions to dismiss trial counsel and retain new counsel

Exhibit C

would delay his sentencing.  (D.I. 53).  The third factor therefore weighs against Middlebrook.

The final factor is prejudice to the defendant, assessed in a slightly different light of the interests against which speedy trial is intended to protect: pretrial incarceration, anxiety and concern, and impairment of the defense.  *Barker*, 407 U.S. at 532.  "With respect to all its various types, the burden of showing prejudice lies with the individual claiming the violation and '[the] possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are being] violated.'"  *Hakeem*, 990 F.2d at 760, *quoting Loud Hawk*, 474 U.S. at 315.

Middlebrook asserts prejudice from the delay, but his assertions are conclusory.  Middlebrook was also under indictment for two additional prosecutions during the time after his conviction and before his sentencing.  As Superior Court stated at sentencing, "the court's point is that those charges are pending and you're being held on those charges. So even if this case fell apart and even if those charges are bogus, you would still be held in prison.  And so you've not served any time waiting for sentencing in this case because of the delay that has been between the time of the jury's verdict and the sentencing."  [B-7].  Middlebrook's anxiety over his situation was the result of his own prolific criminal behavior.  His assertion that he may have lost alibi witnesses had this Court granted his appeal and

$\mathrel{\mkern-1mu\vdash} x \mathrel{\mathchoice{}{}{}{}} h \mathrel{\mathchoice{}{}{}{}} i \mathrel{\mathchoice{}{}{}{}} b i \mathop{\mathstrut}^{19} t \mathrel{\mathchoice{}{}{}{}} C$

the State had retried the case are purely speculative and do
not give rise to objective prejudice to him from the delay
between conviction and sentencing. *See Gov't of Virgin
Islands v. Pemberton*, 813 F.2d 626, 629-30 (3d Cir. 1987).
The fourth factor thus weighs against Middlebrook.

Considering these factors as a whole, Middlebrook did
not have a meritorious speedy sentencing claim. Because the
speedy sentencing claim would not have been successful, it
follows that Middlebrook cannot show that his appellate
counsel was ineffective for failing to raise this claim in
his direct appeal. Thus, Middlebrook has demonstrated
neither cause for, nor prejudice from, the procedural
default of his speedy sentencing claim. The Superior Court
did not abuse its discretion in holding this claim to be
procedurally defaulted by Criminal Rule 61(i)(3).

Exhibit C

## CONCLUSION

The decision of the Superior Court should be affirmed.

STATE OF DELAWARE   .
DEPARTMENT OF JUSTICE

Gregory E. Smith
Bar I.D. No. 3869
Deputy Attorney General
820 North French Street
7th Floor
Carvel State Building
Wilmington, DE   19801
(302)577-8398

Dated:   May 31, 2005

21

Exhibit C

## CERTIFICATION OF MAILING

The undersigned certifies that on May 31, 2005, he

caused the attached *Answering Brief* to be delivered to the

following persons in the form and manner indicated:    ·

    Mikerray Middlebrook
    SBI No. 00295569
    Delaware Correctional Center
    1181 Paddock Road
    Smyrna, Delaware 19977

    _X_ Two true copies by first class mail, postage pre-
    paid

                        STATE OF DELAWARE
                        DEPARTMENT OF JUSTICE

                        Gregory E. Smith, ID # 3869
                        Deputy Attorney General
                        820 North French Street
                        7th Floor
                        Carvel State Building
                        Wilmington, Delaware 19801
                        (302) 577-8398

Exhibit C