(26)

1/28/97 Review his list of motion
Recview his list of motion
Need to get tape re. suppression motion

NAME: NikeRRAY Middlebrook
M.P.C.J.F.
1301 East 12th Street
Wilmington, DE 19809

OFFICE OF The Public DEFENDER
CARVEl State Building
820 North French Strret
Wilmington, DE 19801

DATE: JANUARY 26, 1997

'97 JUN 27 P2:31

DEAR JAMES A. BAYard JR.,

PLEASE FiLE The Motion(s) Indicated BElow In My Behalf:

(✓) Motion For DiscoveRY - RULE 16
(✓) Motion For SPEEdy TriAl-
(✓) Motion For Reduction of BAIl - been charge dropped ? check out.
(✓) Motion For ~~Suppression HEAring~~ -
( ) Motion To Dismiss - Failure to Indict, Failure To Prosecute
( ) Motion For Reduction of SENETENCE
( ) Notice of Appeal
(✓) Other Pre-trial Motions NECESSArY _____

PERSONAl Information

NAME: NikeRRAY K Middlebrook

IN. NO.: _____

9/11/96 case
Did they have worry
I have what anon did
How much money died
I claim to have
robbed from
gun?

Charges: ATT. MurdER, Att MurdER, Att MurdER, Att Robery 1st, Pf OCF, Resist Arress
CRIM ImpeRson, HindEring, ForgERY 2Nd, RE Stol Firear, PDWBPP, AsST 3rd RSP

I NikeRRAy K Middlebrook, AppReciate YouR AssistAnce
For the Filing of thEsE FundAmentAl Motions In My BehAlf, Thank You.

RespEctfully Yours,

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

     PLAINTIFF,

     v.                   :     IN 96091119
                               IN 96091120
                               CR. A. NO. 9608015635

NIKERRAY MIDDLEBROOK

     DEFENDANT.

## NOTICE OF MOTION

To: Ferris Wharton
    Deputy Attorney General
    Carvel State Office Building
    820 North French Street
    Wilmington, Delaware 19801

PLEASE TAKE NOTICE that the undersigned Counsel will present the attached

Defendant's Motion for a New Trial to this Honorable Court at the earliest convenience of

the Court and Counsel.

Dated: June 23, 1998

Caroline P. Ayres, Esq.
503 West Ninth Street
P.O. 85
Wilmington, Delaware 19899
(302) 655-1300
Motion Attorney for Defendant

Ex. A-1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE    :

    PLAINTIFF,    :

             :

    v.    :    IN 96091119
                  IN 96091120
                  CR. A. NO. 9608015635

             :

NIKERRAY MIDDLEBROOK    :

             :

    DEFENDANT.    :

## MOTION FOR A NEW TRIAL

COMES NOW the Defendant, through his attorney, Caroline P. Ayres, and moves

this Honorable Court for a new trial. As grounds, Defendant states the following:

1. Defendant was found guilty of attempted murder, assault in the first degree and various

weapon charges, and was sentenced on June 12, 1998 to 37 years.

2. Petitioner does not have any other sentences he is currently serving other than the
one under attack.

3. Petitioner is currently represented for purposes of this motion by Caroline P.
Ayres, Esquire.

4. This Defendant's first request for a New Trial.

5. Defendant's basis for a new trial is warranted in the interest of justice; and is

based on new evidence, as well as the need of relief from procedural defects, which

occurred during his trial.

6. Defendant asserts that a retrial could reasonably result in a different verdict and

judgment because new evidence and errors of previous defense counsel affected the

outcome of Defendant's trial.

Ex. A-2

7. A new trial is warranted where there is a showing that a retrial could reasonably be expected to result in a different verdict of judgment. See State V. Curran, Del. Super., 116 A.2d 782 (1955), aff'd, Del. Supr., 122 A.2d 16, cert. denied, 352 U.S. 913 (1956). The evidence must also have been discovered since the trial, and could not have been discovered before by the exercise of due diligence; and the evidence is not merely cumulative or impeaching. State v. Hamilton, Del. Super., 406 A.2d 879 (1974).

8. In the present case, a key witness testified at trail that Defendant showed his face by lifting his mask when the shooting occurred. However, new evidence has just come to light that proves that none of the shooters at the scene of the crime had removed or lifted their masks during the shooting. ( Exhibit "A") In fact, none of the shooters' skin could be seen, as they all wore gloves which were never removed during the shooting. This evidence was only discovered inadvertently when a witness to the shooting read about defendant's trial and sentencing in the News Journal at the conclusion of these proceedings. Neither Defendant nor Defense counsel was aware of this witness, until after Defendant's sentencing.

9. Furthermore, a new trial is proper when, under all the circumstance; counsel was so incompetent that the accused was not afforded genuine and effective legal representation. Harris V. State, Del. Supr., 305 A.2d 318 (1973); Derrickson V. State, Del. Supr., 406 A.2d 405 (1979).

10. In other words, this motion is the proper vehicle by which to bring ineffectiveness of counsel claims before the Delaware Courts, Reynolds V. Ellingsworth, 843 F.2d 712 (3d Cir.), cert. denied, 488 U.S. 960 (1988).

11. Defendant was denied his constitutional right to effective counsel, which resulted in a "miscarriage of justice", and "undermined the fundamental legality reliability, integrity, or fairness of the proceedings leading to the judgment of conviction."

12. Additionally, because of ineffectiveness assistance of counsel, Defendant did not make an informed decision about whether to accept the plea offered by the State.

Ex. A-3

13. "To establish a claim ineffective assistance of counsel,. A defendant must prove both:'(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense." Williams V. State, 605 A.2d 103, 106 (Md. 1992), citing Bower V. State, 578 A.2d 734, 738 (Md. 1990).

14. In order to prove the first prong of the test, "a defendant must prove, that, under the prevailing professional norms, his counsel's representation, objectively speaking, fell below a standard of reasonableness." Strickland V. Washington, 460 U.S. at 688, 104 S.Ct. at 2964, 80 L. Ed.2d at 693.

15. In order to prove the second prong of the test," the attempt is to determine whether, but for the deficient performance by counsel, there is a substantial possibility that the defendant would have accepted the plea agreement." Williams V. State, 578 A2d. 734, 739, (Md. 1990) "there was a substantial or significant possibility that the verdict of the trier of facts would have been affected." In the present case. Defense counsel neglected to put on critical witnesses which would have established Defendant's innocence. Defense counsel also failed to properly object to improper and prejudicial evidence presented by the State.

16. In the case of at bar, Defendant also received inefficient assistance of counsel, in violation of his Sixth Amendment right in preparation to decide whether or not to accept the State's offered plea agreement.

17. "A trial attorney performs deficiently when he ... with incomplete or misleading information with regard to the offer." Williams V. State, 605 A.2d 103, 108 (Md. 1992), citing Turner V. State of Tennessee, 158 F.2d 1201, 1205 (6th Cir.. 1988), vacated on other grounds 492 U.S. 902, 109 S. Ct. 3208, 106 L.Ed.2d 559 (1989).

18. Defendant was also prejudiced by the ineffective assistance of counsel because the misrepresentations by defense counsel regarding Defendant's decision to accept the plea agreement offered by the state.

19. Overall, the verdict of guilty in the present case was against the weight of evidence . Therefore, a new trial should be granted. See Hutchins v. State, Del. Supr., 153 A. 2d 204 (1959).

Ex. A-4

WHEREFORE, Defendant respectfully requests that his Motion for a New Trial be granted.

LAW OFFICES OF CAROLINE P. AYRES

Dated:  June 23, 1998

Caroline P. Ayres, Esquire
503 West Ninth Street
P. O. Box 85
Wilmington, DE 19899
(302) 655-1300
Attorney for Defendant

EX A-5

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE         :

     PLAINTIFF,         :

        :

v.             :     IN 96091119
                 IN 96091120
                 CR. A. NO. 9608015635

        :

NIKERRAY MIDDLEBROOK     :

     DEFENDANT.       :

## ORDER

AND NOW, TO WIT, this _____ day of _____, A.D., 1998,

the foregoing Motion having been heard and considered, it is hereby:

ORDERED _____

_____

_____

_____

_____

                                         _____
                                              Judge

EX. A-6

<u>CERTIFICATE OF SERVICE</u>

I, Caroline P. Ayres, Esquire, do hereby certify that I have mailed copies of the attached Motion for a New Trial on June 23, 1998 to the below-mentioned person:

Ferris Wharton
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington Delaware 19801

Dated:  June 23, 1998

Caroline P. Ayres, Esquire
503 West Ninth Street
P. O. Box 85
Wilmington, DE 19899
(302) 655-1300
Attorney for Defendant

EX. A-7

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. ) ID#: 9608015635
)
NIKERRAY MIDDLEBROOK, )
)
Defendant. )

Submitted: June 24, 1998
Decided: June 26, 1998

## ORDER

Upon Defendant's Motion for a New Trial

On June 23, 1998 Defendant, through counsel, filed a Motion for a New Trial. Before the Court asks for the State's response, Defendant must provide more details concerning Amanda Chambers and her affidavit, including but not limited to why she did not come forward sooner. On that point, Ms. Chamber's allegation, in its entirety, is:

> The first I really heard about the trial was when it appeared in the newspaper.

Defendant's trial concluded on July 18, 1997. Ms. Chamber's affidavit was signed on June 23, 1998.

$Ex. A-8$

As to Defendant's ineffective assistance of counsel claim, Defendant's allegations are conclusory. Currently, there is no basis for the Court to pursue them.

In the event that Defendant files an amended or supplemental pleading supplying particulars, the Court will require the State to respond and proceed as circumstances warrant. In connection with an amended or supplemental pleading, it may be necessary for Defendant to obtain transcripts.

Meanwhile, as presented, the Court finds that Defendant's Motion for a New Trial is insufficient on its face to justify further proceedings and is **DENIED.**

**IT IS SO ORDERED.**

June 25, 1998

_____
Date

_____
Judge

oc: Prothonotary
Scott Stein, Deputy Attorney General
Robert Surles, Deputy Attorney General
Caroline P. Ayres, Esquire

2

Ex. A - 9

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          :
                           :
     PLAINTIFF,            :
                           :
v.                         :          IN 96091119
                           :          IN 96091120
                           :          CR. A. NO. 9608015635
                           :
NIKERRAY MIDDLEBROOK       :     •
                           :
     DEFENDANT.            :

## NOTICE OF MOTION

To: Ferris Wharton
    Deputy Attorney General
    Carvel State Office Building
    820 North French Street
    Wilmington, Delaware 19801

    PLEASE TAKE NOTICE that the undersigned Counsel will present the attached

Defendant's Renewed Motion for a New Trial to this Honorable Court at the earliest

convenience of the Court and Counsel.

Dated: July 23, 1998

Caroline P. Ayres, Esq.
503 West Ninth Street
P.O. 85
Wilmington, Delaware 19899
(302) 655-1300
Motion Attorney for Defendant

EX. A-10

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE           :

       PLAINTIFF,          :

                                      :

v.                         :      IN 96091119
                                       IN 96091120
                                       CR. A. NO. 9608015635

                                      :

NIKERRAY MIDDLEBROOK      :

       DEFENDANT.        :

## RENEWED MOTION FOR A NEW TRIAL

COMES NOW the Defendant Nikerray Middlebrook, through his attorney, Caroline P. Ayres, and moves this Honorable Court for a new trial. As grounds, Defendant states the following:

1.    Defendant was found guilty of attempted murder and related charges and sentenced on June 12, 1998.

2.    On June 23, 1998, Defendant filed a Motion for a New Trial with this Court. In response to this motion, the Court ordered that Defendant produce additional information as to why a new witness was not available to testify at the time of the trial, before further consideration of the Motion would be granted.

3.    This is Defendant's Renewed Motion for a New Trial , explaining why the above-mentioned witness, Ms. Amanda Chambers, was only available to testify regarding the facts in this case after the trial had concluded. (Exhibit "A")

4.    Before the trial had become publicized in the present case, Ms. Chambers had moved to Brookland, New York. She lived in New York, until February 1998, when she returned to Delaware. Immediately upon her return to Delaware, she was incarcerated at the Delores Baylor's Correctional Center, where she remains at the present time. While at the Correctional Center, she came across a copy of a News Journal issue, which detailed the conclusion and sentencing in Defendant's case at bar. Before reading this news article, Ms. Chambers had no idea that Mr. Middlebrook was being prosecuted for the above-mentioned crimes. She believed this because, at the time of the shooting, no faces were ever shown that would have implicated anyone in the shooting.    (Exhibit "A")

5.    Defendant avers that Ms. Chamber's testimony must be considered because it directly contradicts testimony that the Defendant's face was seen at the time of the shooting in the present case. This testimony regarding seeing Defendant's face at trial is what lead to the Defendant's conviction.

6.    In order to justify the grant of a new trial on the ground of newly discovered evidence, it must appear that: the evidence will probably change the outcome of the case, if a new trial is granted; that the evidence was discovered since the trial, and could not have been discovered by the exercise of due diligence; and the evidence is not cumulative or impeaching. State v. Hamilton, Del. Super., 406 A.2d 879 (1974). See also Smith v. Smith, Del. Supr., 248 A.2d 146 (1968).

7.    In applying Hamilton to the present case, Defendant avers that Ms. Chamber's testimony will probably change the outcome of the case because she established that it was impossible to see Defendant's face at the time of the shooting

because everyone was wearing a mask. However, her testimony could not with reasonable diligence have been presented during Defendant's trial because Defendant was unaware of her existence, and she was unaware that he was being prosecuted for the shooting she had witnessed, until she had read about Defendant's sentencing. Finally, the testimony of Ms. Chambers is not cumulative or just impeaching, but goes to the very heart of the case, as to whether the Defendant was actually seen at the shooting at which he had been found guilty of committing. Therefore, a new trial in the present case is warranted because of the needed presentation of Ms. Chamber's testimony.

        8.     Consequently, Defendant avers that, pursuant to Superior Court Rule 33, justice requires that he be given a new trial, so that Ms. Chamber's testimony and the truth can be presented.

     WHEREFORE, Defendant respectfully requests that his Renewed Motion for a New Trial be granted.

LAW OFFICES OF CAROLINE P. AYRES

Dated: July 31, 1998

Caroline P. Ayres, Esquire
503 West Ninth Street
P. O. Box 85
Wilmington, DE 19899
(302) 655-1300
Motion Attorney for Defendant

Ex. A-13

STATE OF DELAWARE    :
                                    :SS
COUNTY OF NEW CASTLE :

AFFIDAVIT OF   Amanda Chambers

I, Amanda Chambers , having been duly sworn, based upon personal knowledge and belief, state as follows:

I was at the scene when the alleged muddlebrook. When the shooting occured the shooters had on masks and gloves therefore their color let alone faces could not be seen at all. No one took their masks off or lifted them. They didn't take their gloves off either. The reason I didn't come forth prior to the trial is because it didn't know it went any further than the incident. The first I really heard about the trial was when it appeared in the news paper.

Amanda L Chambers

SWORN and SUBSCRIBED before me this 23rd day of June, 1998, A.D.

Caroline P. Lyons

Notary/Attorney-At-Law

EX.- A-14

# SUPERIOR COURT FOR THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          )

                            )

v.                          )          ID No.: 9608015635

                            )

NIKERRAY MIDDLEBRKOOK       )

                            )

Defendant.                  )

## ORDER

    1. On September 18, 1998, the Court received a letter from Ms. Ayres enclosing an affidavit.

    2. If the State opposes the request, the State will file a response within 15 days.   The State's response shall include the grounds on which the State's opposition is based, including citations to the record and authorities.

    3. *In the event that the State does not respond on or before the time set for the State's filing a response, the Court will consider the motion without further notice or hearing and the Court may grant the motion as unopposed.*

    4. The Court will consider extending the deadline set out above, upon

Ex. A-15

application made expiration of the deadline.

     5. Court will not consider filings made after the deadline, absent

an extension.

     IT ORDERED.

_____       _____
       Date                             Judge

oc:  Prothonotary
pc:  Robert Surke, Attorney General
       Caroline Pa res, Esquire

Ex. A - 16

THE LAW OFFICES OF

# CAROLINE PATRICIA AYRES

ATTORNEY & COUNSELOR AT LAW

September 16, 1998

**CAROLINE PATRICIA AYRES**
Admitted to Delaware, Maryland,
District of Columbia, Virginia, and
United States Supreme Court Bars
Only

OF COUNSEL
**JOHN R. HINER JR.**
Admitted in Delaware and California
Only

OF COUNSEL
**MONTEE WYNN**
Admitted to Pennsylvania, New Jersey,
and District of Columbia Bars Only

OF COUNSEL
**ALERO SMITH-KIDD**
Admitted to Nigerian Bar and
Solicitor in England Only

**TELEPHONE (302) 655-1300**
FAX (302) 655-3032
TOLL FREE 1-800-67 AYRES

**WILMINGTON OFFICE:**
503 WEST NINTH STREET
POST OFFICE BOX 85
WILMINGTON, DELAWARE 19899

**DOVER OFFICE:**
375 WEST NINTH STREET
DOVER, DELAWARE 19901
TELEPHONE (302) 735-5590
FAX (302) 735-5592

**VIRGINIA OFFICE:**
650 TRENTS MILL ROAD
POST OFFICE BOX 907
DILLWYN, VIRGINIA 23936

The Honorable Fred Silverman
Superior Court
One Rodney Square, Suite 101
920 North King Street
Wilmington, Delaware 19801

Re: <u>State v. Nikerray Middlebrook</u>
I.D. No. IN 96091119 and IN 96091120
CR. A. NO. 9608015635

Dear Judge Silverman:

Enclosed please find yet another affidavit that refutes material testimony presented at trial in the above-mentioned case, which also identifies a defendant, not of Mr. Middlebrooks' height. The Defendant respectfully requests that this additional affidavit be considered as additional grounds for granting Mr. Middlebrook a new trial.

Thank you for your consideration of the above-mentioned request.

Respectfully submitted,

Caroline Patricia Ayres

CPA/midd916.doc
cc: middni.01
Mr. Nikkery Middlebrook
Ferris Wharton, Deputy Attorney General

Ex. A-17

# Affidavit of Regina Green

I Regina Green being truley
sworn to depose and state
based upon my personal knowl-
edged belief the following

I saw the 96 shooting involving
Nikkey Middlebrook and witnessed
everything first hand.

The shooter was over 6 feet tall
and slender. At no time did the
shooter removed his ski mask
he was wearing nor his face was
Revealed.

I had no ideal that Nikkey
Middlebrook was being charged
or even tried for this shooting
untill I spoke to Mrs. Phyliss
over 2 months ago. This is when
I made the statements to her.
Mrs. Phyllis called Nikkey's
mother and I told her what
happened. And asked if some-
one would I would tell the

attorney what I saw. And
I said yes. Mr. Regina Green
Regna Green

SWORN TO AND
SUBSCRIBED BEFORE
ME THIS 16th Day of
September.
Caroline Phillips
State of Delaware          Notary Public / Attorney
County of New Castle: ss

EX. A-19



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

| NEW CASTLE COUNTY | KENT COUNTY | SUSSEX COUNTY |
|---|---|---|
| Carvel State Building | Sykes Building | 114 E. Market Street |
| 820 N. French Street | 45 The Green | Georgetown, DE 19947 |
| Wilmington, DE 19801 | Dover, DE 19901 | (302) 856-5352 |
| Criminal Division (302) 577-8500 | Criminal Division (302) 739-4211 | Fax: (302) 856-5369 |
| Fax: (302) 577-2496 | Fax: (302) 739-6727 | |
| Civil Division (302) 577-8400 | Civil Division (302) 739-7641 | |
| Fax: (302) 577-6630 | Fax: (302) 739-7652 | |

October 9, 1998

**PLEASE REPLY TO:**

New Castle County
(302) 577-8500

The Honorable Fred S. Silverman
Superior Court Judges Chambers
Daniel L. Herrmann Courthouse
1020 N. King Street
Wilmington, DE 19801

### RE: State v. Nikerray Middlebrook
### ID# 9608015635

Dear Judge Silverman:

## STATE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENSE'S MOTION FOR A NEW TRIAL.

### QUESTIONS PRESENTED

Is there merit for granting a new trial based on newly discovered evidence, when a witness, not available at trial, comes forward with information already present after a sentence has been ordered?

### NEW EVIDENCE

The defendant has presented the court with affidavits of two newly discovered witnesses. First, Amanda Chambers writes that the shooters kept their faces covered with masks the entire time and no faces were ever shown. Second, Regina Green states that she was present at the shooting and that at no time did the shooters mask come off, nor was his face revealed.

*Ex. A-20*

## EVIDENCE AT TRIAL

At trial, Jerry Williams stated that before he was shot, he got a look at the masked shooter and knew from his past experience that it was the defendant. Jerome Perkins indicated that after Jerry Williams was shot, the shooter pursued him around the block and at some point, the shooter dropped an item. When the shooter dropped down to retrieve the item, the ski mask came up and the defendant's face was revealed to Jerry Williams.

Miesha Perkins testified at trial that as the shooter pursued Jerome Perkins down the block, she pursued the shooter. At some point, the shooter dropped something and had to bend over to pick it up. When the shooter bent down, he peeled his mask bask and turned his head. At that point, she saw clearly that it was the defendant, who she knew previously.

Fred Fillipone, a Wilmington Police Department evidence officer testified that he recovered 9mm casings, gloves and most importantly a mask from the scene.

At the trial, Gretta Lewis and Darnell Anderson testified for the defendant. They testified that there were two masked shooters and that they never saw their faces.

## ANALYSIS

Delaware Superior Court Rule 33 allows a "new trial based on the grounds of newly discovered evidence (if a motion is made) before or within two years after final judgment..." The standard applicable to said evidence was outlined in Lynch, 2 W. W. Hann. 600, 32 Del. 600, 128 A. 565 (Del. Term 1925), and have been followed ever since. "In order to warrant the granting of a new trial...., it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial and could not have been discovered before the exercise of due diligence; (3) that it is not merely cumulative or impeaching" State v. Hamilton, 406 A.2d (1974), citing Delaware v. Lynch.

Clearly, the new evidence is cumulative to the evidence presented at trial. At trial, witnesses testified that there were two masked shooters whose face they never saw. Now, we have affidavits from witnesses who again state that the shooter's face was never seen. One affidavit comes from Amanda Chambers, who was arrested for Trafficking in Cocaine and pled guilty to Maintaining a Vehicle on June 29, 1998. Her affidavit repeats the shooters kept their faces covered. The second affidavit from Regina Green, states there is only one shooter and that he kept his face covered. While this information is inconsistent with other defense witnesses as to the number of shooters, it is cumulative as to the face never having been seen.

The fact that the mask was found at the scene clearly corroborates that it came off of the defendant's face at some point. The fact that the State's witnesses indicate that they saw his face when he bent down further down the block during the chase can easily

$$EX. A-2l$$

account for the defense witnesses not seeing the shooters face.

At trial, this same defense evidence was presented and the jury found the defendant guilty. This new evidence is not such that it will probably change the result if a new trial is granted. Therefore, the State prays that you deny the defendant's motion for a new trial.

Respectfully submitted,

Robert H. Surles
Deputy Attorney General

RHS/agl
xc:    Carolyn Ayres, Esquire

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,              )
                                )
v.                              )        ID#: 9608015635
                                )
NIKERRAY K. MIDDLEBROOK,         )

Submitted: October 9, 1998
Decided: November 17, 1998

## ORDER

Defendant's Renewed Motion For A New Trial--*DENIED*

After a jury trial, on July 18, 1997 Defendant was convicted of

Attempted Murder First Degree and related offenses. The central issue at trial was:

Who shot Jerome Perkins and Jerry Williams on August 23, 1996? The jury found

Defendant guilty and now he asks for a new trial based on newly discovered

evidence.

**I.**

For clarity, brief reference to the case's procedural history is

appropriate. Defendant was arrested shortly after the shooting. He was indicted on

*Ex. A-23*

September 30, 1996. Defendant's trial began July 15, 1997 and, as mentioned, it ended on July 18, 1997. For reasons that have no bearing on the pending motion, Defendant's sentencing was delayed until June 12, 1998.

On June 23, 1998, shortly after sentencing and almost two years after the shootings and Defendant's arrest, Defendant, through counsel, came forward with newly discovered evidence. Specifically, in a motion Defendant presented Amanda Chambers' affidavit. The affidavit claims that "the shooters had on masks and gloves therefore their color let alone faces could not be seen at all."

On June 26, 1998, three days after the motion was filed, the Court issued a preliminary order denying Defendant's motion because it was "insufficient on its face to justify further proceedings." The Court left open the possibility that Defendant would file an amended or supplemental pleading supplying details concerning Chambers' affidavit, including but not limited to why she did not come forward sooner.

On August 21, 1998 Defendant renewed his motion supplying specifics concerning Chambers and her affidavit. On September 4, 1998 the Court solicited the State's response. While the Court waited for the State to respond to Defendant's renewed motion, on September 16, 1998 Defendant filed Regina Green's affidavit

2

claiming that "the shooter was over 6 feet tall and slender. . . ." Further, Green

claims: "At no time did the shooter remove his ski mask . . . nor was his face

revealed." The State filed a letter memorandum in response to both affidavits on

October 9, 1998.

## II.

A Motion for a new trial based on newly discovered evidence is

governed by Super. Ct. Crim. R. 33 and is addressed to the Court's discretion.[1]

The standard for granting a new trial based upon newly discovered evidence is

settled firmly. The defendant must establish that (1) the evidence could not have

been discovered before trial by the exercise of due diligence; (2) the evidence is not

merely cumulative or impeaching;[2] (3) the evidence would probably change the

outcome of a new trial. When analyzing the new evidence, the Court must

determine whether the jury's verdict would be changed by the evidence.[3] The new

---

[1]    *Johnson v. State*, Del. Supr., No. 363, Holland, J. (June 22, 1993)(Order).

[2]    *Truitt v. State*, Del. Supr., 687 A.2d 197 (1996).

[3]    *State v. Hamilton*, Del. Super., 406 A.2d 879, 881 (1974).

Defendant's motion for a new trial is denied because the newly
discovered witness' testimony would not have changed the jury's
verdict. *Hamilton*, 406 A.2d at 881. *Hamilton* reasons that although
the witness was present during a shooting, his testimony would add
little and would not likely change the weight the jury gave to the three

3

Ex. A-24

evidence must meet all three criteria in order to precipitate a new trial.[4]

## III.

For present purposes, the Court will assume without deciding that the newly discovered evidence could not have been discovered before trial by the exercise of due diligence. Considering Defendant's pleadings, that is a questionable assumption. For example, Chambers' explanation for not coming forward sooner rests in part on her being in prison. Green offers little explanation why for years she kept to herself the fact that she had witnessed an attempted assassination by a masked gunman. Neither Chambers nor Green explains why, despite the obvious seriousness of the crimes they supposedly witnessed and the ensuing police investigation, they did not offer themselves immediately as witnesses. Nevertheless, because the Court will not conduct a hearing, as discussed below, the Court assumes for present purposes that Chambers' and Green's failure to come forward with eyewitness testimony for approximately one and one half years and two years, respectively, was justified.

---

eyewitnesses' testimony. *Id*. at 881.

[4]  *Lloyd v. State*, Del. Supr., 534 A.2d 1262, 1267 (1987).

4

IV.

Defendant's motion fails because the newly discovered evidence was merely cumulative and impeaching and it probably would not change the outcome of a new trial. Again, for present purposes the Court will view Defendant's newly discovered evidence as entirely proven. Like the Court's previous assumptions about why the evidence could not have been discovered with due diligence before trial, the assumption that Defendant's affidavits are true also is tenuous. As the State observes, Chambers' and Green's affidavits are not consistent even with each other. For example, while Chambers and Green both describe themselves as eyewitnesses, Chambers saw masked "shooters" and Green saw "the shooter." Nevertheless, because there will not be a hearing, the Court accepts the affidavits at face value. The Court assumes that if Chambers and Green testified, the jury would be convinced that the gunman or gunmen were masked and unidentifiable.

Ordinarily, conclusive evidence that an assailant was unidentifiable would be impressive. In this case, however, the newly discovered evidence adds little to the trial record. Everyone always has agreed that the person who shot Jerome Perkins and Jerry Williams was masked. Williams, however, testified that from his unique vantage point he was able to observe Defendant well enough to

5

make out that the person who shot him was Defendant. Further, Perkins testified

that after Williams was shot, Defendant chased Perkins from the original scene. In

a different location, not readily observable by witnesses to the original shooting,

Perkins saw Defendant pull up Defendant's mask, which made it possible for

Perkins to identify him. The victims' testimony was buttressed by other direct and

circumstantial evidence. Meisha Perkins testified that as the shooter chased Perkins

after shooting Williams, she followed them and she also saw Defendant expose his

face.    The victims and Meisha Perkins all knew Defendant from before the

shootings.    The police found gloves and a mask near the scene and the State's

witnesses provided a motive for the shootings. Defendant presented witnesses who

testified similar to Chambers and Green that the person who shot Williams and

chased Perkins could not be recognized. Moreover, Defendant called witnesses to

establish an alibi.

In short, at trial both sides focused intensely on the gunman's initial

unidentifiability. The State did not seriously contest it. Instead, the State presented

evidence from which the jury concluded unanimously and beyond a reasonable doubt

that, despite the gunman's wearing a mask, Defendant was the assailant.

It is apparent that the jury rejected Defendant's alibi and reconciled the

6

eyewitness testimony. While the bystanders to Williams' being shot were unable to identify the shooter, Williams might have been able to recognize Defendant. More importantly, the jury surely scrutinized the eyewitness testimony and its proponents. The jury was able to conclude that Jerome and Meisha Perkins actually had an opportunity to identify Defendant as the one who shot Perkins. The only reasonable conclusion from the evidence is that whoever shot Perkins also shot Williams.

The only evidence that Chambers and Green provide that arguably is new is Green's claim that the shooter "was over 6 feet tall and slender." Without the benefit of a transcript, the Court cannot precisely recall the physical descriptions offered by each eyewitness. Even so, Green's description does not come in a vacuum. To the extent that it is consistent with other witness' testimony, by definition, it is cumulative. To the extent that it is inconsistent it merely is impeaching and not probably persuasive.

For the most part, Defendant's new evidence purportedly undermines the prosecution's case at best. It does little, however, to establish Defendant's innocence. In essence, Defendant's new evidence simply brings into relief Defendant's original argument that the State's case does not support a conviction. Defendant's jury had to have scrutinized the victims' and the other witnesses'

7

testimony, taking into account the gunman's dress and the witnesses' biases and motives. The jury was able to agree unanimously and without reasonable doubt that Defendant was guilty.

On balance, this was a neighborhood incident that happened instantly on a city street. A masked gunman appeared suddenly, fired shots and fled. Casual bystanders coming forward, sooner and much later, with earnest yet differing accounts are *scenes a faire*.[5] As mentioned above, at first glance Defendant's new evidence seemingly is persuasive potentially. On closer inspection, in context, Chambers' and Green's affidavits are more of the same. They do not form a basis from which the Court can conclude that their testimony probably would cause Defendant's acquittal.

---

[5]    *See e.g.*, *Hamilton*, 406 A.2d at 880.

NiKerray Middlebrook
M.P.C. J.F
1301 East 12th Street
Wilmington, DE 19809

Office of The Public DEFENDER                    May 12, 1997
Carvel State Building
820 North French Street
Wilmington, DE 19801


DEAr Mr. James A Rayard Jr,

I am EXpEditing a transmitted copy of this letter
requesting that you intertain the enclosed "Motion To
Dismiss." I'm sure you are well aware that the state
does not have any evidence in retrospect to the
previous charge that happend in September I have had
trial set three times, January 27, 1997; March 24, 1997
And May 5, 1997. Therefore a Motion To Dismiss would
be Appropriate. I would also like for you, if Frasible, to
send me the following material:

1) My Rule 16 Motion that you filed

2) Police Report

3) Copies of any scientific Test on mask, etc.

4) Finger Prints obtained from yous

5) All statements made by witnesses or myself And
any And All Evidence in your possesson the
state intends to use at trial

Very Truly Yours,

Nikerry K Middlebrook
Nikerry K Middlebrook

January 14, 2000

Dear Mr. Bayard,

This letter is a follow-up to the meeting we had on January 14, 2000 at Gander Hill. First, I would like to address the issue of us being straight forward with each other. When we met over three years ago, I was 22 years old, a baby to this system. All I ask from this point on is that you are frank in what you say. ~~very honest~~

Mr. Bayard as to our conversation about you discussing everything with me before filing anything to the courts. I am still holding a firm position on this matter. I want to have sufficient information so I can take a intelligent part in the decisions concerning the goal of my representation and the method of accomplishing what I want, my freedom. I want you to review all legal documents with me before filing to the court. I want you to explain the general strategy and your outlook of success in this case. I believe you have a duty to act in my best interest.

Secondly, I would like to address the fact that last time you were appointed to represent me, I filed a motion to dismiss court appointed counsel. I was willing to proceed pro se at sentencing for the simple reason you failed to represent me effectively. Mr. Bayard we can not make any progress in this legal matter unless we settle some matters you neglected at trial:

(1) You failed to move for funds to hire expert to have scientific analysis done on the ski mask found at scene of crime or failed to move to suppress the ski mask

as being entered into evidence as being wore by me. I suffered unfair prejudice because of you not conducting scientific analysis on the ski mask to in fact prove it was wore by me.

(2) You failed to object to the gun found at scene being entered into evidence or challenge the chain of custody on the gun. When a gun is fired, not only is the bullet marked as it goes through the barrel, but the casing also carries a unique marks from being hit by the firing pin, and any mechanical ejection system. Like the expended bullet, these marks are unique to each gun, and even if the police are able to obtain the casing as evidence they can correctly match gun.

(3) I checked my files and recall requesting you to file a motion to suppress — Identification J.R. Perkins was only shown one photograph of myself. I believe this would make the identification suggestive

(4) You never at trial pointed out the document that brings doubt in the confidence of Jerry Williams testimony

Mr. Bayard for good cause you could decline the appointment to represent me. If you cannot handle my case competently because taking my case at this point would result in conflict of interest. I believe that if we cannot come to an agreement in these matters the attorney — client relationship will be damaged. I cannot trust your actions until we meet face to face to discuss everything.

Very truly,

Nickerray Middlebrook

TO: Mr. Bayard
FROM: N. Kerray Middlebrook
    RE: Rule 61 motion          Date: 5/24/00


Dear Mr. Bayard :
        I am deeply troubled by the fact no Rule 61 motion has been filed, you were reappointed by Honorable Fred S. Silverman on January 11, 2000 to handle the situation. Also I expressed to you at our meeting on January 14, 2000 I want us to review all documents before being filed to the court. I desire for a filing deadline in the matter [ Filing of Rule 61 motion ].
        I would like to share some information I have come accross lately, I read an article in the News Journal, [ senate Approves DNA evidence bill S.S. 1 for S.B. 329 (Winslow) ]. The article caught my attention on the fact convicted criminals who believe DNA Evidence could exonerate them would have 3 years from time the final judgement is entered to ask Court to order DNA Test. I feel we need to discuss this matter between ourselves and consider making the request to the Court.
        Also I have found cases which involved the matter where counsel failed to docket an appeal, sentence was vacated and the individual was resentenced. [ Bobby Price V. State and Browne V. State, Del Supr., No. 350, 1983 Herrmann, C.J. (oct. 25, 1987) (order) ] I seriously think you should review each case

Exhibit ❸ B-4

PAge 2          I expect a meeting with you
at Gander Hill soon and a filing of the
Rule 61 motion concerning the issues. What
is the issue concerning the transcript.


                              Very Truly Yours,

                              [signature]

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

**200 West Ninth Street**
**Suite 300-A**
**Wilmington, Delaware 19801**
**(302) 577-7042**
**(302) 577-7048 (FAX)**

**MARY M. JOHNSTON**
**Chief Counsel**

**ANDREA L. ROCANELLI**
**MICHAEL S. McGINNISS**
**MARY SUSAN MUCH**
**Disciplinary Counsel**

August 28, 2000

**CONFIDENTIAL**

Mr. Nikkeray Middlebrook
#295569
Gander Hill Prison
P.O. Box 9561
Wilmington, DE 19809

Re:    **Complaint letter dated August 16, 2000 about James Bayard, Esquire**

Dear Mr. Middlebrook:

I have received your letter dated August 16, 2000. In this letter you state a complaint about James Bayard's conduct in connection with his re-appointment to represent you. This Office cannot reconsider or review the Superior Court's decision to re-appoint Mr. Bayard as your defense counsel. However, this Office can make a limited inquiry into your allegations of undue delay. Enclosed is a copy of my letter to Mr. Bayard.

Very truly yours,

Andrea L. Rocanelli

cc:    James A. Bayard, Jr., Esquire

EX. B-6

# Office of Disciplinary Counsel

SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

August 28, 2000

### CONFIDENTIAL

James A. Bayard Jr., Esquire
Public Defender's Office
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

Re:    Complaint letter dated August 16, 2000 about James Bayard, Esquire

Dear Mr. Bayard:

This Office has received the enclosed complaint from Mr. Middlebrook. As you know, claims of ineffective assistance of counsel are not addressed by this Office because there are other avenues to address those claims. However, Mr. Middlebrook's complaint seems to raise another issue - specifically, lack of communication and lack of diligence. I am especially sensitive to such claims by Mr. Middlebrook because he seems to have lost his right to a direct appeal, possibly because of another attorney's failure to meet the filing deadline.

Therefore, I ask that you respond to Mr. Middlebrook's complaint, but **only** to his claims that you have been non-responsive and have not filed the necessary post conviction motions on his behalf. Thank you for your attention to this matter.

Sincerely,

Andrea L. Rocanelli

Enclosure
cc:    Mr. Nikkeray Middlebrook

# **Office of Disciplinary Counsel**
SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

**MARY M. JOHNSTON**
**Chief Counsel**

**ANDREA L. ROCANELLI**
**MICHAEL S. McGINNISS**
**MARY SUSAN MUCH**
**Disciplinary Counsel**

September 11, 2000

**CONFIDENTIAL**

James A. Bayard Jr., Esquire
Public Defender's Office
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

**Re:   Complaint letter dated August 16, 2000 about James Bayard, Esquire**

Dear Mr. Bayard:

Thank you for your August 30, 2000 letter. As I stated in my August 28, 2000 letter to you, I had already understood that it was another attorney, and not you, who had failed to perfect Mr. Middlebrook's direct appeal rights in the first instance. However, I agree that my letter was otherwise unclear. I would like you to respond to Mr. Middlebrook's contention that, *since your re-appointment by Judge Silverman,* you have not filed the necessary post conviction motions on his behalf. Thank you.

Sincerely,

Andrea L. Rocanelli

Enclosure
cc:      Mr. Nikkeray Middlebrook



**PUBLIC DEFENDER OF THE STATE OF DELAWARE**
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JAMES A. BAYARD, JR.
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5121

September 13, 2000

Andrea L. Rocanelli
Office of the Disciplinary Counsel
Supreme Court of the State of Delaware
200 West 9th Street, Suite 300-A
P.O. Box 472
Wilmington, DE   19899

RE:   Nikerray Middlebrook

Dear Ms. Rocanelli:

I have read your letter of September 11, 2000. I am enclosing a copy of the May 31, 2000 pro se motion for postconviction relief written by Mr. Middlebrook. The first ground does not apply to me. The second ground, you point out in your letter of September 11, 2000 that that issue does not apply to me.

The decision not to have a DNA test run (possible head hairs in a mask) was based on the compelling surrounding evidence of the case.

I will check to see if the mask is still available. The Innocence Project can review the matter to see if in fact there is a DNA sample available for review. Depending on any DNA test results, an appropriate motion would be filed.

Very truly yours,

*James A. Bayard, Jr.*
James A. Bayard, Jr.
Assistant Public Defender

JAB,Jr./ks

cc:   Nikerray Middlebrook

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

October 5, 2000

**CONFIDENTIAL**

Mr. Nikerray Middlebrook
SBI 295569
M.P.C.J.F.
P. O. Box 9561
Wilmington, DE 19809

Re:    **ODC File No. C 00-8-9**
       **(James A. Bayard, Jr., Esquire)**

Dear Mr. Middlebrook:

Thank you for your October 2 letter. I agree that Mr. Bayard has been unresponsive to my specific inquiries. I have now contacted his supervisor and hope to receive some answers.

Very truly yours,

Andrea L. Rocanelli

ALR/mrw

EX. B-10



**PUBLIC DEFENDER OF THE STATE OF DELAWARE**
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JAMES A. BAYARD, JR.
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5121

November 9, 2000

Mr. Nikerray Middlebrook
c/o Delaware Correctional Center
Smyrna Landing Road
Smyrna, DE  19977

Dear Mr. Middlebrook:

I have obtained a copy of the list of evidence presented at your trial in 1997.  This information will be shared with the Innocence Project.  They will then know what evidence to look for that may have potential DNA value.

I will advise you when the Innocence Project has reviewed the evidence from your trial.

Have you sent your application to the Innocence Project?

Very truly yours,

James A. Bayard, Jr.
Assistant Public Defender

JAB,Jr./ks

Ex. B-11

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

November 29, 2000

**CONFIDENTIAL**

Mr. Nikerray Middlebrook
SBI 295569
Delaware Correctional Center
Smyrna, DE 19977

> **Re:    ODC File No. C00-8-9**
> **(James A. Bayard, Jr., Esquire)**

Dear Mr. Middlebrook:

Thank you for your recent letters. I have an appointment with Mr. Bayard and his supervisor to discuss Mr. Bayard's handling of your criminal matter. Please remember that this Office cannot intervene in your pending criminal matter and will not take any steps to ask that a different Public Defender be assigned to your case. Rather, I hope to improve the communication between you and Mr. Bayard and also to establish appropriate expectations for how the case will be handled.

Very truly yours,

Andrea L. Rocanelli

ALR/mrw



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
### 820 NORTH FRENCH STREET, THIRD FLOOR
### P.O. BOX 8911
### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

LISA M. SCHWIND
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5125

September 17, 2001

Jerome M. Capone, Esquire
4 East 8th Street, #200
Wilmington, DE 19801

Re:    State v. Nikerray Middlebrook
       ID#9608015635

Dear Jerry:

The above referenced defendant has applied to the Innocence Project for assistance with post-conviction DNA testing pursuant to 11 Del. Code, Section 4504. He had written to me for assistance. Previously he had been listed as pro se.

Unaware that you were representing him as appointed counsel in his appeal, I spoke to him via video phone on September 12, 2001. I immediately learned that you were representing him on his appeal. I informed him that I would be closing his file at this time.

If it is likely that his appeal may not be complete before that date I am notifying you so that his right for testing may be preserved. 11 Del. Code Section 4504 requires that motions for post-conviction DNA testing for cases with convictions occurring on or before September 1, 2001 must be filed prior to September 1, 2002.

As I have not discussed his case with him, nor reviewed any of the materials connected with his case, I am unaware whether DNA testing would even be applicable.

Ex. B-13

September 17, 2001
Page two

_____

My file also reflects a notation that he may have also filed for assistance with the Georgetown Law Center Innocence Project. I did <u>not</u> follow up with him about this issue. Apparently, I received a call from them.

Very truly yours,

Lisa M. Schwind
Director, Innocence Project

LMS:tez

cc: Nikerray Middlebrook

Ex. B-14

JUDGE SILVERMAN'S CHAMBERS

AUG 2 0 2004

RECEIVED

**M. JANE BRADY**
ATTORNEY GENERAL

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

August 20, 2004

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

**PLEASE REPLY TO :**    New Castle County

The Honorable Fred Silverman
Superior Court Judges Chambers
New Castle County Courthouse
500 N. King Street
Wilmington, Delaware 19801

In Re:  State v. Nikerray Middlebrook
I.D. No. 9608015635

Your Honor,

I am the deputy assigned to the above case in which Your Honor requested the taped statements of the defendant. I have been unable to locate any such tapes in the possession of the State. I have been advised by the evidence custodian at Wilmington Police Department that all evidence in this case was destroyed in February 2002. There are no evidence receipts documenting exactly what was destroyed. Additionally, the Chief Investigating Officer in this case does not possess any taped statements of the defendant. I have asked the Superior Court Prothonotary if they possessed such tapes, and I was advised that none were entered into evidence during trial. I am still searching for the prosecution file, and respectfully request an additional two weeks in order to conduct a complete investigation. If you have any questions, please do not hesitate to contact me.

Respectfully submitted,

John Barber
Deputy Attorney General

SO ORDERED.
_____ , Judge August 20

Copy to : Crim Prothonotary
Mr. Nikerray Middlebrook — For information only. No response or other filing is called for. We will see what the State files in 2 weeks.

Exhibit B-15

(Case 1:05-cv-00827-SLR    Document 26-2    Filed 11/21/2006    Page 47 of 47)

who were acquainted with him.    Finally, the record reveals that all the evidence in this case was destroyed in February 2002. *See State v. Middlebrook*, ID No. 9608015635, Letter from John Barber, DAG to Superior Court and Order (Del. Super. Ct. Aug. 20, 2004) (D.I. 137) (Ex. F).    Consequently, at the time of Middlebrook's request, there was no evidence to test.

In sum, the evidence Middlebrook asked the Superior Court to have tested for DNA evidence has been destroyed.    As a result, the court could not grant Middlebrook's request.    In light of the situation, the Superior Court's decision to deny Middlebrook's postconviction motion was not an abuse of discretion.

There's a credibility problem Here.

10

Ex. B-16